7 So.2d 296

**ALABAMA GREAT SOUTHERN R. CO. v.
BOLTON.**

**6 Div. 872.**

Supreme Court of Alabama.

March 12, 1942.

Rehearing Denied April 16, 1942.

Stokely, Scrivner, Dominick & Smith, of Birmingham, and Jones, Dominick & McEachin, of Tuscaloosa, for appellant.

DeGraffenried & McDuffie, of Tuscaloosa, for appellee.

BROWN, Justice.

This is an action on the case to recover damages for personal injuries suffered by the plaintiff Bolton who was driving the automobile the damage to which was the subject matter of the controversy in Ala-

bama Great Southern R. Co. v. Moundville Motor Co., 241 Ala. 633, 4 So.2d 305.

In the trial of that case the issue of contributory negligence was absent. In the case at bar the major controversy arises out of that issue. The contention of appellant is, although the plaintiff testified that he stopped and listened and looked in both directions when he reached the tracks immediately north of the tracks on which the train was proceeding east towards Birmingham, that his hearing and eyesight were good and did not see the train approaching, nevertheless the train was approaching the crossing in broad daylight and the view from the crossing toward the train was unobstructed, and therefore plaintiff's testimony did not constitute such conflict in the evidence as warranted the submission of the issue of contributory negligence to the jury. Alabama Great Southern R. Co. v. Durr, 222 Ala. 504, 133 So. 56, and cases cited therein are here cited to support this contention.

The basis for this contention is the refusal of the general affirmative charge requested in writing. If the soundness of the contention, under the evidence in this case, be conceded, the charge was properly refused for the reason that the evidence as a whole made a case for jury decision on the question of subsequent negligence.

In response to interrogatories propounded to the defendant by plaintiff under the statute the defendant answered:

"The engineer on the defendant's train had a view of the crossing and of 10th Avenue north of the crossing, when the locomotive was at approximately 150 yards west of the center of 10th Avenue.

"As the defendant's train approached the crossing where this accident occurred, the engineer saw the automobile which was being driven by plaintiff, approaching the crossing. When defendant's engineer first saw said automobile, the automobile was approximately 156 feet north of the track that the defendant's train was traveling on, and the front end of the locomotive in defendant's train was approximately 200 feet west of the center of 10th Avenue. When the defendant's engineer first saw said automobile, the automobile was traveling at a slow rate of speed which indicated to the defendant's engineer that the driver of the automobile would stop in a place of safety, in order to permit the defendant's train to pass over the crossing, without attempting to drive said automobile over the defendant's track in advance of the defendant's train.

"At the time when the engineer on the defendant's train first saw said automobile, the front end of the locomotive in the defendant's train was approximately 200 feet west of the center of 10th Avenue. At said time the bell on the locomotive was ringing. In the opinion of the engineer on the defendant's locomotive, this bell was ringing in such a manner as to be clearly audible to the driver of the automobile which was seen approaching the crossing. From the time when he saw the automobile, up until the time when the collision occurred, the engineer did not observe in which direction the driver of the automobile was looking, but assumed that the driver of the automobile was keeping a proper lookout, as he approached the crossing, for the approach of trains approaching the crossing and that, as a result thereof, he was aware of the approach of the defendant's train. The automobile did not slacken its speed from the moment when the engineer on the defendant's train first saw it, until the moment of the collision. However, when the automobile was first seen by the engineer on the defendant's train, it was traveling at a slow rate of speed, and at such a rate of speed as caused the engineer on defendant's train to form the opinion that the driver of the automobile was aware of the approach of the train, and was intending to drive his automobile up close to the track that the defendant's train was traveling on, and then stop his automobile in a place of safety, which is so often done by motorists when approaching a railroad track along which a train is traveling. * * *

"The engineer on the defendant's locomotive was the only one of the defendant's employees, who was on the train involved in this accident, who saw, or was in such a position that he could see, the automobile being driven by the plaintiff, before the collision occurred. As already stated, the engineer on the defendant's train saw the automobile traveling, at a slow rate of speed, in a southerly direction toward the track, on which the defendant's train was traveling, and he assumed that the driver of the automobile was aware of the approach of the train and was intending to drive said automobile up close to the track that the defendant's train was traveling on, and then stop said automobile in a place of safety. Defendant's engineer did not ob-

serve anything in connection with the operation of the automobile which caused him to change such opinion, until the collision occurred. After the front end of the locomotive on the defendant's train started across 10th Avenue, the engineer could not see the automobile, and the first time that the engineer on the defendant's train realized that the automobile was in a place of danger was when he heard the crash when the automobile collided with the locomotive, whereupon said engineer immediately applied the brakes and closed the throttle."

There was also evidence showing that the automobile was proceeding toward the track at a speed of from eight to fifteen miles per hour, and that a freight train on the other track of defendant had passed over the crossing going west toward the station in Tuscaloosa. And as stated the defendant's testimony *shows,* the automobile was coming upon the blind side of the electric train.

We are of opinion, after full consideration of the evidence as a whole, that its preponderance shows that the plaintiff did not stop, look and listen; that he proceeded toward the track unconscious of the approach of the train, and in these circumstances a blast of the whistle would probably have been sufficient to attract his attention to the train and cause him to stop. Alabama Great Southern R. Co. v. Moundville Motor Co., supra.

While the engineer had the right to assume that the driver of the automobile saw and heard the train, and would stop before reaching the tracks on which his train was approaching the crossing so long as the danger was not imminent, he could not indulge this assumption any further. Here the engineer indulged this assumption until the locomotive entirely obscured his view of the approaching automobile which was still moving forward toward the crossing when he last saw it. Randle v. Birmingham Railway, Light & Power Co., 158 Ala. 532, 48 So. 114.

The motion to continue the case on account of the absence of the defendant's engineer, was addressed to the court's sound discretion, and we can not affirm this discretion was abused. The engineer had been examined on the trial of the case of Moundville Motor Co., and plaintiff consented that the defendant might use his evidence as reported on that trial, and that

any matter not covered could be submitted in a showing supplementary to the engineer's testimony. The defendant refused plaintiff's offer. Deegan v. Pake, 233 Ala. 435, 172 So. 270.

So far as the bill of exceptions shows, the only effect the ruling of the court had in respect to requiring the parties to restrike the jury was to substitute J. Tullie Jones drawn and subsequently summoned for the person who was not drawn but to whom the deputy delivered the first summons issued to said J. Tullie Jones. The jury as selected was from the regular panel drawn, summoned and qualified to serve for the week. The ruling in the case of Murray v. State, 210 Ala. 603, 98 So. 871, was in respect to a special venire for the case and that authority is not in point.

We are of opinion that said rulings of the court in the instant case do not constitute reversible error.

The last clause of § 9952, Code of 1923, § 170, Code of 1940, Title 48, declares the duty of an engineer "on perceiving any obstruction on the track." As construed and applied by many decisions of this court, it is to "use all the means within his power, *known to skillful engineers,*" to avert injury. [Italics supplied.] Harris v. Nashville C. & St. Louis R. R. Co., 153 Ala. 139, 44 So. 962, 14 L.R.A., N.S., 261. In the cited case the provision of the statute above italicized, was held to be of controlling force, and where the undisputed expert testimony showed that a locomotive could be stopped quicker by applying the brakes and not reversing the engine, than it could by applying the brakes and reversing the engine, such evidence was binding on the court and jury.

The court in the excerpts from the oral charge, the predicate for assignments of errors 14, 15 and 16, ignored the requirement of the statute and left to the jury the power to determine what constituted subsequent negligence—a question of law. Ordinarily this would constitute error to reverse, but the defendant's evidence, given in its answers to interrogatories propounded to it, shows without dispute that the engineer did nothing to avert the accident; that he assumed that the automobile would stop until the engineer's view of the automobile was cut off by the locomotive, and not until the collision occurred did he take steps to stop or check the speed of the train. Louisville

& N. R. R. Co. v. Calvert, as Adm'r, 172 Ala. 597, 55 So. 812; Randle v. Birmingham Railway, Light & Power Co., supra. In these circumstances the error was without injury.

Affirmed.

GARDNER, C. J., THOMAS, and FOSTER, JJ., concur.