16 So.2d 720

### ATLANTIC COAST LINE R. CO. v. WETHERINGTON.

3 Div. 406.

Supreme Court of Alabama.

Jan. 20, 1944.

Rehearing Denied March 2, 1944.

Evans Hinson and A. H. Arrington, both of Montgomery, and W. L. Lee and Alto V. Lee, III, both of Dothan, for appellant.

Hill, Hill, Whiting & Rives, of Montgomery, for appellee.

for the death of plaintiff's intestate caused by the explosion of the boiler of a locomotive while decedent was operating it as the engineer. The suit was brought under the Federal Employers' Liability Act, Title 45, Section 51, U.S.C.A., based on the Boiler Inspection Act of Congress,—Title 45, section 23, U.S.C.A.,—which provides: "It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its' boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb."

The chief question is whether the explosion was caused by the fact that the boiler or some of its parts or appurtenances as offered by defendant to plaintiff's intestate for use and used on that occasion were not in proper condition or safe to be operated in service at the time, without unnecessary peril to the life or limb of the engineer, in violation of the Federal Act, supra, or, on the other hand, was it caused solely by the failure of the engineer (deceased) properly to operate the engine at the time.

If the improper operation of the engine at the time was the sole proximate cause of the explosion, and death of plaintiff's intestate, there can be no recovery on this complaint. Baltimore & O. R. Co. v. Groeger, 266 U.S. 521, 45 S.Ct. 169, 69 L.Ed. 419; Ehalt v. McCarthy, Utah, 138 P.2d 639.

The improper or unsafe condition of the boiler may result either from some mechanical defect or because of some matter added to it which when so added and used created such improper or unsafe condition as described in the Boiler Inspection Act. Lilly v. Grand Trunk Western R. Co., 317 U.S. 481, 63 S.Ct. 347, 87 L.Ed. 411; Ehalt v. McCarthy, supra. We quote as follows from the Lilly case, supra, 63 S.Ct. at page 352: "From various cases denying recovery under the Act respondent attempts to extract a general rule that the Act covers only defects in construction or mechanical operation and affords no protection against the presence of dangerous objects or foreign matter. But there is no warrant in the language of the Act for construing it so narrowly, or for denying the Commission power to remedy shortcomings, other than purely mechanical de-

FOSTER, Justice.

The questions on this appeal arise from a judgment for plaintiff against appellant

fects, which may make operation unsafe. The Act without limitation speaks of equipment 'in proper condition and safe to operate * * * without unnecessary peril to life or limb'. Conditions other than mechanical imperfections can plainly render equipment unsafe to operate without unnecessary peril to life or limb."

No question of negligence in fact by the railroad company or contributory negligence by deceased are involved in this case. Lilly v. Grand Trunk Western R. Co., supra.

■ The explosion could have been attributable on the evidence either (1) solely to the manner of operating the engine, by negligently permitting the water in the boiler to get too low and thereby allowing the crown sheet to overheat, and then explode when water was added, without the appliance or the water in it being defective; or (2) to the defective sort of water used in the boiler which caused the chemical reaction of "foaming," which prevented the water gauge from accurately disclosing the amount of water in the boiler, and causing an unusual exhaustion of the water in the boiler. If the explosion was caused solely by the first hypothesis, there is no cause of action as here set out.

■ But we think that the principle of Lilly v. Grand Trunk Western R. Co., supra, justifies us in holding that if the second phase of the foregoing hypothesis was a proximate contributing cause of the explosion, there is a cause of action contained in the complaint, though the boiler and all of its appurtenances were otherwise in proper and safe condition. However, it was twenty-six years old, and there was no evidence of a boiler inspection as required by the Act.

■ All the trainmen on that engine were killed by the explosion, so that there is no direct evidence of how it occurred or what brought it about, or what they did in that connection. Of the two probable causes, the plaintiff has the burden to show that the defective condition described above existed and was proximately contributory to the explosion. There is no evidence which justifies the finding of a cause other than one of the two which we have named above. It is not sufficient that it might have been due to a defect. A verdict cannot rest on speculation or conjecture. There must be evidence which justifies a reasonable inference that it was a defect

rather than that the negligence of the engineer was the sole proximate cause. If there was a defect which proximately contributed to the explosion, the negligence of the engineer, if there was any, also contributing, would not prevent a recovery in this action, based on the Boiler Inspection Act, supra. The cases cited above so hold.

■ But if there is a finding that he was not negligent, then there was circumstantial evidence with that cause eliminated, all of which would justify a further finding that there was a defect as described, which was a proximate cause.

It is said in Rose v. Stephens & Condit Transp. Co., C.C., 11 F. 438, 439, that "Boilers do not usually explode when they are in safe condition, and are properly managed, [therefore] the inference that [a] boiler was not in safe condition, or was not properly managed, was justifiable." 22 Amer.Jur. 215, section 98; Kleinman v. Banner Laundry Co., 150 Minn. 515, 186 N.W. 123, 23 A.L.R. 484, 485.

■ So we inquire—was the engineer negligent? There is a presumption of law, rebuttable to be sure, that every person in possession of his normal faculties in a situation known to be dangerous to himself will give heed to instincts of safety and self-preservation to exercise ordinary care for his own personal protection, and in the absence of proof to the contrary that he performed his duty in that respect. It is founded on a law of nature and has for its motive the fear of pain or death. 20 Amer.Jur. 214, section 217; 16 Amer. Jur. 207, section 302; 84 A.L.R. 1223 et seq., and notes. A like presumption exists against suicide by a normal person. Mutual Life Ins. Co. v. Maddox, 221 Ala. 292, 128 So. 383; New York Life Ins. Co. v. Beason, 229 Ala. 140, 155 So. 530.

■ But that presumption attends the acts of other employees of the defendant as well as those of plaintiff. So it is said that when plaintiff's cause of action is based on the negligence of defendant, or its employees under circumstances which depend largely upon a presumption, as where the evidence does not disclose the facts which caused a death, "the negligence of the defendant cannot be inferred from a presumption of care on the part of the person killed." Looney v. Metropolitan R. Co., 200 U.S. 480, 26 S.Ct. 303, 306, 50 L.Ed. 564; Atchison, T. & S. F. R. Co. v. Toops, 281 U.S. 351, 50 S.Ct. 281, 74 L.Ed.

896. This is said to be for the reason that the presumption attends the defendant as well as the plaintiff, and one presumption cannot be built upon another. Looney v. Metropolitan R. Co., supra; 35 Amer.Jur. 914.

While the cause of action in the instant case is not founded on negligence in fact, we would not be willing to say that there is a presumption that there was a defect, because there is a presumption that the engineer was not negligent. Illinois Cent. R. Co. v. Houck, 72 Ill. 285, Notes, L.R.A.1917E, pages 194 and 195: see Lynch v. Ninemire Packing Co., 63 Wash. 423, 115 P. 838, L.R.A.1917E, 178; Texas & P. R. Co. v. Barrett, 166 U.S. 617, 17 S.Ct. 707, 41 L.Ed. 1136; Notes, 23 A.L.R. pages 484 et seq. But it may be so inferred by the jury from circumstantial evidence. 35 Amer.Jur. 915, 916 et seq.; 22 Amer.Jur. 216, notes 12 to 18. While a presumption will not be built on another presumption, evidence of the facts on which a presumption arises remains as a matter for the consideration of the jury to aid in interpreting and understanding the situation, although the presumption may have spent its force as such. See annotation in 95 A.L.R. 892; 103 A.L.R. 194. And it is said that certain presumptions remain as a matter of evidence when based on human impulses. Mutual Life Ins. Co. v. Maddox, supra; New York Life Ins. Co. v. Beason, supra.

We are not prepared to say whether the failure of the carrier to inspect the boiler (as filled with water and including the chemical content of the water), as required by the Act of Congress, is sufficient to cast on it the duty to overcome a presumption that there was a defect. This question seems not to have been decided by any court. We refrain from taking a position on it until it is necessary. But we will in this case rest the decision on circumstantial evidence, with that failure as one circumstance, both as to whether the engineer was negligent and whether there was a defect.

In this case, deceased was operating the engine. He was a skilled engineer on that road and had been for twenty-three years; strong and vigorous, in the prime of life, and had not been long enough on that trip to be fatigued. He knew, as the jury could find, that if the water gauge indicated that the water in the boiler was too low to be safe, it was very dangerous then to add water, but that he should cool off the fire first. The jury could assume that the engineer had too much regard for his own safety to put cold water on the crown sheet that he knew in all probability had overheated, and therefore could infer that he did not do that intentionally.

There was no proof that defendant used due care to supply the right sort of water. But that would not absolve it from liability if the water supplied was in fact improper to the danger point and was a contributing cause of the explosion. Foaming of heated water was shown to be due to impurities in it, which may be aided by adding chemicals. There was no evidence of the qualities of the water used, nor its tendency or habit of foaming, but that defendant did not treat it to prevent foaming was proved by defendant's evidence. If the gauge by reason of the foaming water incorrectly indicated the water level, thereby causing him to delay putting water in the boiler until it was dangerously overheated, that fact justified a finding that the supply of improper water was a proximate contributing cause of the explosion. There was evidence on which the jury could eliminate all causes for the manifestations shown by the evidence, other than that the water in the boiler was foaming.

So that if the jury finds, as they may, that this engineer knew how to act safely and in fact exercised due care to do so, in connection with circumstances indicating that there may have been a defect in the sort of water furnished for the boiler, and no other cause for the explosion may be inferred from the evidence, we cannot say that it would be mere speculation or conjecture for the jury to find that there was a prohibited defect, and be consistent with the rule requiring more than a scintilla of evidence to support the verdict.

Plaintiff also contends that there was a boiler defect in that after the explosion twenty staybolts were found to be broken, whereas Rule 25, approved by the Interstate Commerce Commission, provides that no boiler shall be allowed to remain in service when five or more staybolts are broken or plugged (not now to mention other features of that rule). But there is no evidence that would support a reasonable inference that they were broken before the explosion and not caused by it.

 Appellant also insists that it was due the general charge as to count 1 of the complaint because it alleged that decedent's death "resulted in whole or in part by reason of a defect or insufficiency, due to the defendant's negligence, in its said engine locomotive or boiler," and the evidence does not justify a finding of such negligence. Count 2 is substantially as count 1, except that count 2 makes the additional allegation that such dereliction consisted in using a locomotive whose boiler or parts or appurtenances were not in proper condition and safe to operate in the service. No such contention is made as to count 2. The Boiler Inspection Act merely establishes a rule of duty owing by an interstate carrier, but prescribes no form of action to be pursued for a recovery of damages for its breach. That rule does not include the element of negligence in fact.

 The Federal Employers' Liability Act may be used to prescribe the proper form of action. Lilly v. Grand Trunk Western R. Co., supra. It is founded on negligence, but it was held in Moore v. Chesapeake & O. R. Co., 291 U.S. 205, 54 S.Ct. 402, 404, 78 L.Ed. 755 (cited in Lilly v. Grand Trunk Western R. Co., supra) following other cases, that when that Act (section 51, title 45 U.S.C.A.) provides that a right of action exists when the injury or death results from any defect or insufficiency of its appliances, due to its negligence, "it clearly is the legislative intent to treat a violation of the Safety Appliance Act (the same in this respect as the Boiler Inspection Act) as 'negligence'—what is sometimes called negligence per se." So that when the complaint sets up the existence of facts which make the requirements of the Boiler Inspection Act the basis of defendant's duty, which is alleged to have been breached, the allegation of negligence means the negligence per se which is presumed conclusively for the purposes of the Federal Employers' Liability Act. When a violation of the Boiler Inspection Act is shown by the allegations, it is not necessary to make express reference to it. Harlan v. Wabash R. Co., 335 Mo. 414, 73 S.W.2d 749.

So that appellant was not entitled to the affirmative charge on either count 1 or 2, which were the only counts submitted to the jury.

The other assignments of error insisted on seem to be controlled by the foregoing discussion. We find no reversible error.

Affirmed.

GARDNER, C. J., and BOULDIN and STAKELY, JJ., concur.