256 So.2d 861

The **ALABAMA GREAT SOUTHERN RAILROAD COMPANY, a Corporation**

v.

**Junie Viola Chambers EVANS, who sues in her capacity as Executrix of the Estate of her deceased husband, W. R. Evans.**

**Junie Viola Chambers EVANS, Executrix**

v.

**Jesse SAHM.**

**6 Div. 801 and 816.**

Supreme Court of Alabama.

Jan. 6, 1972.

Cabaniss, Johnston, Gardner & Clark and Crawford S. McGivaren, Jr., Birmingham, for appellant.

Rives, Peterson, Pettus, Conway & Burge, Birmingham, for appellee and cross-appellant.

MADDOX, Justice.

Plaintiff, Junie Viola Chambers Evans, who sued as Executrix of the Estate of her deceased husband, W. R. Evans, was awarded $25,000 against the Alabama Great Southern Railroad in a wrongful death action. The railroad appealed from the $25,000 judgment and from the judgment of the trial court in overruling its motion for a new trial.

The cause was submitted to the jury on three counts. Counts three and five of the complaint relied solely on the conduct of the railroad's engineer, Jesse Sahm, and since the jury exonerated Jesse Sahm, each party agrees that under established principles, the verdict against the railroad solely cannot be related to either of these two counts. Count four, however, did not rely solely on the conduct of engineer Sahm, but alleged that Evans' death and property damage were the proximate consequence of the defendants' negligently causing or allowing a train of the defendant railroad and operated by the defendant Sahm, while acting within the line and scope of his employment by the defendant railroad, to run into, upon and against the automobile operated by Evans at a public crossing in the City of Fort Payne. Both parties to this appeal agree that in order to sustain the verdict, there must have been evidence of

negligence on the part of agents of the railroad other than that of the engineer, Sahm. The railroad's argument here is that the jury verdict was against the great weight and preponderance of the evidence, and, consequently, the lower court should have granted its motion for a new trial.

Since the sufficiency of the evidence is at issue, we briefly set out some of the tendencies of the evidence.

The collision between the train and the deceased's automobile occurred on Hulgan Road, near U.S. Highway 11, in the southern portion of the City of Fort Payne, at a point where Hulgan Road runs by the M & S Steel Company plant and where Hulgan Road is crossed by the track of the railroad. The track ran north and south and the roadway ran east and west.

The train was proceeding south at a speed of approximately 70 miles per hour at the time of the collision. The deceased was proceeding west in his car. After striking the car in which the deceased was riding, the engine stopped .8 of a mile from the crossing. The car was completely demolished and the body of the deceased was crushed and decapitated.

The crossing was approximately one mile inside the city limits of Fort Payne, as extended by Act No. 77, 1967 Acts, p. 108, some seven months prior to the accident. Neither the engineer nor the fireman knew that the city limits had been extended by law. Both knew the speed limit for locomotives within the city limits of Fort Payne had been 30 miles per hour since 1937.

There was some testimony, although conflicting, that there was substantial traffic across the tracks at the crossing during the day. Testimony of witnesses and exhibits show that bushes, trees and high grass were along the tracks (the side from which Evans approached the tracks) in the northeast quadrant of the intersection, which the jury could have found would have obstructed Evans' vision up the tracks. Evi-

dence was presented to the effect that the growth of weeds and bushes along the right-of-way obstructed vision to the point that a motorist would have to pull upon the track in order to see the block signals located .3 of a mile up the track from the crossing. There was evidence that the fireman was riding in the cab of the engine and was twelve or thirteen feet above the level of the tracks and that the height of bushes and trees prevented his seeing the Evans car during the entire time as the train and car approached the crossing. The fireman testified that he first saw the car when the train was approximately 1400 feet from the crossing. He said that he lost sight of the car because of the growth along the eastern side of the track and saw the car again when the car was 50 feet from the crossing and the train was 250 feet from the crossing.

There were no crossbucks, stop signs or flashing signals of any kind at the crossing at the time of the accident. The plaintiff alleged, and the jury could have found, that the Hulgan Road crossing was a public crossing.

The engineer testified that his time card indicated "a 30 mile an hour speed restriction through Fort Payne" at the time of the accident and that no agent of the railroad charged with the responsibility of advising him about restrictions had told him that the city limits of Fort Payne had been changed. He said that the superintendent of the railroad in Fort Payne would have been responsible for putting out a bulletin on the speed limit change. He testified that the outstanding instructions from the railroad given to him were to the effect that he could travel at the Hulgan Road crossing at a maximum speed of 80 miles per hour, subject to special conditions which the jury could have found were not applicable in this case.

■■ The verdict of the jury and the judgment of the court exonerated the engineer of the train, Jesse Sahm. By such verdict and judgment, the railroad was ex-

onerated as to any possible culpable conduct on the part of Jesse Sahm and this acquittal of the engineer by the verdict and judgment means any consideration of evidence of negligence on his part must necessarily be eliminated in determining the soundness of the verdict against the railroad, [Louisville & Nashville R.R. Co. v. Simmons, 251 Ala. 131, 36 So.2d 460 (1948)], since it is firmly established that a judgment exonerating the servant relieves the master when the servant's conduct is the only basis of liability against the master.

One of the questions presented by this appeal is whether the verdict in this case as to the negligence of some agent, servant or employee of the railroad, independent of any negligence on the part of Jesse Sahm, the engineer, is contrary to the great weight and preponderance of the evidence in this case. To answer this question, we are guided by some well known principles of law, including one that verdicts are presumed to be correct, and no ground for the granting of a new trial will be more carefully scrutinized or more rigidly limited than that the verdict is contrary to the weight of the evidence. Bagley v. Green, 277 Ala. 118, 167 So.2d 545 (1964). The refusal of the trial judge to grant a new trial on the ground that the verdict is contrary to the weight of the evidence will not be reversed unless, after allowing all reasonable presumptions as to its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court reviewing the cause on appeal that it is wrong and unjust. Louisville & Nashville R.R. Co. v. Crim, 273 Ala. 114, 136 So.2d 190 (1961); Cobb v. Malone, 92 Ala. 630, 9 So. 738 (1891); Southern Railway Co. v. Reeder, 281 Ala. 458, 204 So.2d 808 (1967).

The jury had a right to determine that, even though engineer Sahm was operating the engine along the track, he was operating it at a speed which his superiors had failed to tell him was impermissible.

The engineer testified that he had operated the train in accordance with legal speed limits at all other crossings in Fort Payne in accordance with instructions which he had. In view of this evidence, the jury was authorized to find that the failure of the engineer's superiors to exercise ordinary and reasonable care by changing his instructions was negligence which proximately caused the injuries and damages made the basis of this action.

We have carefully examined the testimony and the exhibits and we are persuaded that the appellant has not sustained the burden of overcoming the presumption that the verdict is correct.

Appellant contends that even if there was evidence of negligence on the part of the railroad, the deceased was guilty of contributory negligence, since the fireman testified that Evans did not stop, look and listen before entering upon the tracks. But it cannot be affirmed as a matter of law, in every case and under all circumstances, that there is an absolute duty to stop, look and listen, before a traveler may go upon a railroad crossing. Cunningham Hardware Co. v. Louisville & Nashville R.R. Co., 209 Ala. 327, 96 So. 358 (1923); Southern Railway Co. v. Carter, 276 Ala. 218, 160 So.2d 628 (1964).

Furthermore, even though the fireman testified that the deceased did not stop, the jury could weigh this testimony along with the other testimony of the fireman that his observation of the car was made through one point where there was an opening in the bushes. The fireman testified:

"Q. Even though you're high, those bushes kept you from seeing a car coming down the road except at that point, except at that one place?

"A. Yes, sir, that's right.

"Q. I will ask you, sir, whether or not it isn't true the only reason you can see the car at that place was because there was a little hole in the bushes?

"A. Yes, sir."

The engineer said he didn't know whether Evans stopped or not.

■ Admittedly, the testimony of the fireman, if believed, would have been sufficient for the jury to conclude that Evans did not stop. But, does this testimony, in view of all the circumstances shown by the evidence, annul the rebuttable presumption that a person in possession of his normal faculties will follow the law of self-preservation and exercise ordinary care for his own personal protection? We think not. In Louisville & Nashville R.R. Co. v. Davis, 236 Ala. 191, 181 So. 695 (1938), this Court discusses the presumption based on the law of self-preservation. The Court said:

"True, it has been held, that, following the law of self-preservation, in the absence of any evidence or circumstance to the contrary, there is a presumption that this duty was observed. Baltimore & Potomac R.R. Co. v. Landrigan, 191 U.S. 461, 24 S.Ct. 137, 48 L.Ed. 262. This presumption, however, in each case must be considered in connection with all the facts and circumstances, as, for instance, in the present case a straight track for some distance, and the headlight burning and the noise of the train, all of which are to be weighed by the jury in determining the question of contributory negligence. See, also, Bromley v. Birmingham Mineral R.R. Co., 95 Ala. 397, 403, 11 So. 341, and Louisville & Nashville R.R. Co. v. Crawford, 89 Ala. 240, 245, 8 So. 243. It cannot be said, therefore, that under all the facts and circumstances plaintiff's intestate was guilty of contributory negligence as a matter of law."

■ The burden was upon the railroad to prove its plea of contributory negligence. Contributory negligence is matter purely defensive under our decisions, and it follows that there are no presumptions against a plaintiff of a want of due care and diligence on his part, and there is no burden on the plaintiff to prove affirmatively that he exercised due care and diligence. Bromley v. Birmingham Mineral R.R. Co., 95 Ala. 397, 11 So. 341 (1891).

In Griffin Lumber Co. v. Harper, 252 Ala. 93, 39 So.2d 399 (1949), this Court, with two members dissenting, held:

" . . . There is a rebuttable presumption recognized by the law that every person in possession of his normal faculties in a situation known to be dangerous to himself, will give heed to instincts of safety and self-preservation to exercise ordinary care for his own personal protection. It is founded on a law of nature and has its motive the fear of pain or death. Atlantic Coast Line R. Co. v. Wetherington, 245 Ala. 313(9), 16 So.2d 720. . . ."

■ In this case, the evidence shows there were only three eyewitnesses to the collision; the engineer, the fireman and presumably, the deceased. The deceased's lips are sealed in death. The engineer testified that he did not know whether the deceased stopped or not. The fireman stated Evans did not stop. In view of all the circumstances shown by the evidence, the rebuttable presumption that a person in possession of his normal faculties will follow the law of self-preservation and exercise ordinary care for his own personal protection is not annulled. Whether plaintiff's intestate was guilty of contributory negligence was a jury question, resolved contrary to the contention of the appellant by the jury verdict and strengthened by the trial court's denial of a motion for new trial.

We, therefore, conclude that the trial court committed no error in denying appellant's motion for a new trial on the ground that the verdict of the jury was against the weight of the evidence, and the judgment of the trial court is due to be affirmed.

Appellee cross-appealed as "a wise precaution", in case of a reversal, from that

aspect of the judgment which exonerated the engineer, Sahm. In view of our affirmance of this judgment, we pretermit consideration of the cross-appeal.

The judgment from which an appeal was taken by The Alabama Great Southern Railroad Company is due to be affirmed.

Affirmed.

LAWSON, HARWOOD and McCALL, JJ., concur.

HEFLIN, C. J., concurs in the result.

HEFLIN, Chief Justice (concurring in result):

Under the facts of this case, I do not agree with the treatment given the presumption of self-preservation in the majority opinion. However, I concur in the affirmance of the case, but for a different reason in connection with the issue of contributory negligence.

The fireman, E. L. Edwards, testified that the train engine was approximately 1400 feet north of the crossing when he first saw the automobile; that the automobile at that time was approximately 200 to 250 feet from the crossing; and that the horn (whistle) of the train was not blown at that time. He testified that he told the engineer "to get ready, you may have to blow the whistle". There is no evidence thereafter that the fireman mentioned the automobile to the engineer. This witness further stated that he did not see the car again until it was approximately 50 to 55 feet from the crossing; that he had lost sight of the car; that the bushes and trees on the east side of the track kept him from seeing the car up until that point; that he knew prior to this time that the bushes and trees interfered with his vision; that he knew there was not a stop sign at the crossing; and that the train was not blow-ing its whistle. He never testified he told the engineer to blow the whistle. He further testified that at the time he saw the automobile for the second time it was 50 to 55 feet from the crossing and moving toward the crossing; that the automobile could have stopped before reaching the crossing from that point; and that after seeing the automobile at this place, the whistle was blown for the first time.

A witness by the name of McKinney testified that he heard the train blow and almost instantly heard the collision; and that if the train whistle had been blown before that, he could have heard it. Mr. Underwood testified, "that it blowed about the time it hit", and that the only time he heard the whistle blow was at the time of the crash.

The testimony was in conflict as to when the whistle or horn was first blown. There was no evidence that the speed of the train was reduced after discovery of the approaching automobile before collision. The jury could have inferred from evidence that the bushes and trees also obstructed the view of the motorist.

The jury could have found that the fireman, being on the left-hand side, had the primary duty of vigilance to that side, and the deficiencies in his conduct constituted subsequent negligence upon which the verdict was based. The Court charged the jury on subsequent negligence.

Even if a motorist in grade crossing collision is guilty of contributory negligence, railroad's request for general affirmative charge was properly refused where evidence as a whole made a case for jury on question of subsequent negligence. Alabama Great Southern R. Co. v. Bolton, 242 Ala. 562, 7 So.2d 296. See also Southern Railway Co. v. Hughes, 267 Ala. 418, 103 So.2d 324 and Louisville & Nashville Railroad Company v. Byrd (5th Cir. 1962) 298 F.2d 586.