BEATTY, Justice.
This is an appeal by the plaintiff from a judgment entered upon a jury verdict for the defendant in this wrongful death case.
The only issue before us on appeal concerns the propriety of the learned trial court’s refusal to give a certain jury instruction requested by the plaintiff. That issue has been discussed at length in the trial court’s order which denied plaintiff’s motion for a new trial. Because our study of the issue has convinced us that Judge Marvin Cherner’s analysis is correct, we adopt that order as our opinion:
*1086 “This case has now been submitted for decision by this Court on the Motion for New Trial filed by the plaintiff, Margie A. Letson, as dependent widow for herself and dependent minor child, Monty Letson. For convenience, Mrs. Letson in her individual capacity and in her representative capacity will be referred to merely as ‘Letson.’
“As the primary ground asserted by Let-son in support of her Motion for New Trial, she argues that the Court erred to reversal in refusing to give her requested charge No. 1 which stated as follows:
“ T charge you Ladies and Gentlemen of the Jury that there is a rebuttable presumption that a person in possession of his normal faculties will follow the law of self-preservation and exercise ordinary care for his own personal protection. This presumption is rebuttable and if you are reasonably satisfied from the evidence that the plaintiff did not exercise ordinary care for his own personal protection then the presumption is annulled. I further charge you that you have a right to take this presumption into consideration in determining whether or not the deceased on the occasion complained of conducted himself as a reasonably prudent person would have under the conditions that existed.’
“Plaintiff Letson has also filed a motion pursuant to Rule 10(f) of the Alabama Rules of Appellate Procedure requesting the Court to correct the record to reflect certain statements made during a pre-charge conference held by the Court. The pre-charge conference was an informal proceeding held by the Court to discuss the oral instructions to be given by the Court to the jury so as to give counsel an opportunity to make any suggestions they might have concerning the Court’s charge and also for the purpose of informing the attorneys concerning the Court’s oral charge so that their closing arguments could be based on the instructions which the Court would give the jury. As stated by Letson, her counsel, at the pre-charge conference, requested the Court to charge the jury that there is a rebuttable presumption of evidentiary significance based on the law of self-preservation that a deceased plaintiff exercised reasonable care for his own safety, citing A. G. S. v. Evans, 288 Ala. 25, 256 So.2d 861 (1972); Griffin Lumber Co. v. Harper, 252 Ala. 93, 39 So.2d 399 (1949); ACL R R Co. v. Wetherington, 245 Ala. 313, 16 So.2d 720 (1944); L&N R R Co. v. Davis, 236 Ala. 191, 181 So. 695 (1938) and also 22 Am.Jur.2d Death §§ 215-216.
“As plaintiff Letson states in her motion, the Court indicated in its pre-charge conference that it would not charge the jury that there was a rebuttable presumption of evi-dentiary significance based on the law of self-preservation that a deceased plaintiff exercised reasonable care for his own safety-
“Furthermore, as indicated by the record, the Court allowed counsel for plaintiff Let-son to except to the Court’s oral charge after the jury retired but before it began its deliberations. The Court then indicated to counsel for plaintiff Letson that it would permit such counsel to prepare a written charge and submit the same later for purposes of protecting the record in order to make it clear to any appellate court that the charge was presented to this Court and that this Court refused the same.
“Plaintiff Letson makes claim in this case for the wrongful death of her late husband, Clyde Letson, who was killed on March 10, 1978, in the course of his employment as a utility maintenance mechanic in the First National-Southern Natural Building.
“The First National-Southern Natural Building was designed to have its own self-sufficient power system operated by gas turbines. The system provides heating and air conditioning and also generates all of the electricity needed for the building. All of the energy required for the operation of the power plant is supplied by natural gas which is piped into the building under pressure.
“On March 10, 1978, Clyde Letson had been employed in maintenance approximately 5 years. He had been instructed to check the cartridge on a filter manufactured by the defendant Fram Corporation, possibly to obtain the number of the filter *1087 so that new ones could be ordered. The particular filter was in a pipeline supplying natural gas to the gas turbines and was under a pressure of 150 psi.
“Thomas J. White, Assistant Superintendent, testified that Clyde Letson was down in a sort of trench where the Fram filter was located; that he heard a sound like a pop. White then saw that Clyde Letson had been struck in the face and was unconscious. Clyde Letson never regained consciousness and died shortly after being taken to the hospital.
“The top of the Fram filter was closed by means of a metal plate 9" in diameter attached to the filter body by means of a coupling known in the industry as a victaulic coupling. According to expert testimony presented by the defendant at trial, the victaulic coupling is a widely accepted closure for pressurized systems. One of its primary advantages is that it gives a positive seal; i.e. pressure against this type of coupling has the effect of causing it to seal more tightly and prevent the escape of the substance which is under pressure.
“White testified that shortly after the accident, he made an inspection of the pressurized line in which the Fram filter was located. He found that valves located in the line on both sides of the filter were in a closed position. He also found the bleeder valve located at the bottom of the filter to be in a closed position. He opened this valve and a small amount of liquid consisting of a mixture of water and oil ran out in his hand. It was his opinion that this indicated that the bleeder valve was not stopped up and that the liquid would have come through if the bleeder valve had been opened earlier.
“The evidence thus indicated that Clyde Letson had isolated the filter in the line by shutting the valves on both sides of the same but had neglected to bleed the line and relieve the pressure on the filter before undertaking to remove the 9" metal plate by loosening the bolt holding the same in place. Since the system was under pressure of 150 psi, the 9" plate was subjected to a total pressure in excess of 4,000 pounds. Consequently, when the bolt was loosened to a point when it no longer held the metal plate in place, the same was propelled against Letson’s face with tremendous force by the pressurized gas in the system.
“It was the theory of plaintiff’s case that the Fram filter was defective in its design and unreasonably dangerous. Plaintiff Letson contended that it was not of a design which the plaintiff denoted as ‘self-bleeding,’ meaning that the filter should have been designed with a type of closure which would have still held the metal plate in place when being opened, even though the filter had not been vented or bled to relieve the pressure before opening the same. Alternatively, plaintiff Letson contended that a pressure gauge should have been located on the top of the filter which would then have disclosed to persons opening the same that the filter was still under pressure; and finally, that the vent valve should have been located on the top of the filter where it could be easily seen rather than on the bottom of the same.
“All of these contentions were strenuously opposed by the defendant, Fram Corporation, and its experts. In addition, Fram contended that evidence concerning the circumstances of Clyde Letson’s death indicated that he had been negligent himself in failing to bleed the line and relieve the pressure before undertaking to open the filter.
“At the conclusion of the trial, this case was submitted to the jury on the claim asserted by Letson under the Alabama Extended Manufacturer’s Liability Doctrine; namely, that the filter was in a defective condition which was unreasonably dangerous to Clyde Letson as an employee of Southern Natural Gas Company in the process of inspecting the same. The jury was also instructed that Fram Corporation asserted as an affirmative defense that Clyde Letson was himself guilty of negligence which proximately caused or contributed to cause his injuries and death. The Court stated in connection with this defense:
“ ‘Now, I’m coming to what we call the affirmative defense. In addition to deny *1088 ing that it manufactured a defective product which proximately caused or contributed to cause the injuries and death of Clyde Letson, Fram also states — or asserts — that Clyde Letson was himself guilty of negligence which proximately caused or contributed to cause his injuries and death. Since this is an affirmative defense, the burden of proof here shifts and is on Fram to reasonably satisfy you from all of the evidence presented in the case that Clyde Letson was himself negligent in carrying out the work which he was performing on the occasion of the accident made the basis of this lawsuit, and that such negligence proximately caused or contributed to cause his injuries and death.’
“The Court further explained the term ‘negligence’ and ‘proximate cause.’ On submission of this case to the jury, a verdict was returned in favor of the defendant Fram Corporation and judgment was rendered in accordance with the jury verdict.
“In support of her argument that the Court erred to reversal in refusing to give the jury her requested written instruction regarding the presumption based on the law of self-preservation that a deceased plaintiff will exercise reasonable care for his own safety, Letson has cited a number of decisions of the Supreme Court of Alabama referring with approval to the presumption. However, it is not clear from reading any of the decisions that the trial court ever instructed the jury concerning such presumption. It does appear that the Supreme Court referred to the presumption as a means of sustaining or overturning the verdict of the jury where the circumstance under which the accident occurred was such that it was impossible to determine whether one of the causes of the accident was the negligence of a person who was then killed.
“For example, in Griffin Lumber Co. v. Harper, 252 Ala. 93, 39 So.2d 399 (1949), the deceased was a passenger in a truck containing a very heavy load of logs. Both he and the driver of the truck were killed when the truck, travelling at a great speed on a downgrade, failed to navigate a curve but went straight and hit a bridge abutment with great force.
“Reversing a verdict and judgment in favor of the representative of the deceased passenger, the Supreme Court concluded that the speed at which the truck was travelling was not alone sufficient evidence from which wantonness could be inferred. It found that there were no skid marks and thus no evidence that the brakes had ever been applied. The Supreme Court stated that there was no evidence from which a reasonable inference could be drawn that the conduct of the driver was wilful or reckless or that he was not doing what he could to avert the danger. The Court stated that brakes on the truck do fail unexpectedly at times and that steering appliances do lock unexpectedly. No one could tell in this case whether the failure of the driver was due to such cause.
“In the absence of evidence concerning the cause of the truck travelling at great speed, the Supreme Court felt warranted in applying the presumption against negligence and on that basis reversed the verdict and judgment rendered by the trial court.
“In Alabama Great Southern Railroad Co. v. Evans, 288 Ala. 25, 256 So.2d 861 (1972), claim was made on behalf of a deceased motorist who was killed when the automobile he was operating was struck by a railroad train at a public crossing in Fort Payne, Alabama. Evidence was presented that the train was travelling at a speed of approximately 70 miles per hour at the time of the collision although it was operating within the city limits of Fort Payne where the speed limit for locomotives was 30 miles per hour.
“There were no crossbucks, stop signs or flashing signals of any kind at the crossing at the time of the accident. Furthermore, evidence was presented that bushes, trees and high grass were along the tracks which obstructed the vision of a motorist looking up the track to see if a train was approaching.
“The Supreme Court concluded in view of all the circumstances shown by the evidence, the rebuttable presumption that a deceased person would exercise ordinary *1089 care for his own protection was not annulled. The Supreme Court concluded that the trial court committed no error in denying the railroad’s motion for a new trial made on the ground that the verdict of the jury was against the weight of the evidence.
“In Louisville & Nashville Railroad Co. v. Davis, 236 Ala. 191, 181 So. 695 (1938), the deceased was struck by a railroad train at or near a railroad crossing at night. His body was found lying between the rails some 18 or 27 feet south of the crossing. Affirming a judgment and verdict in favor of the deceased’s representative, the Supreme Court referred to the rebuttable presumption against negligence as follows:
“ ‘True, it has been held that, following the law of self-preservation, in the absence of any evidence or circumstance to the contrary, there is a presumption that this duty was observed. Baltimore & Potomac R. R. Co. v. Landrigan, 191 U.S. 461, 24 S.Ct. 137, 48 L.Ed. 262. This presumption, however, in each case must be considered in connection with all the facts and circumstances, as, for instance, in the present case a straight track for some distance, and the headlight burning and the noise of the train, all of which are to be weighed by the jury in determining the question of contributory negligence....’"
“In Atlantic Coastline Railroad Co. v. Wetherington, 245 Ala. 313, 16 So.2d 720 (1944), plaintiff’s intestate was killed by the explosion of the boiler of a locomotive while the decedent was operating the locomotive as an engineer. From the evidence presented, the Supreme Court found that the explosion could have been caused either by the engineer’s negligence in permitting the water in the boiler to get too low, thereby allowing the crown sheet to overheat and explode when water was added; or that defective water used in the boiler caused the chemical reaction of ‘foaming,’ which prevented the water gauge from accurately disclosing the amount of water in the boiler so that the water was allowed to be exhausted in the boiler causing the explosion when water was added. All of the other trainmen had also been killed by the explosion so there was no evidence presented justifying the finding of a cause for the explosion other than one of the two described.
“Under those circumstances, the Court applied the presumption against negligence in favor of a deceased person to affirm the verdict and judgment in favor of the plaintiff.
“In each of the above-cited cases, the Supreme Court applied the presumption against negligence to support the verdict and judgment of the Court or to reverse the verdict and judgment of the Court. There is no indication from the opinion in any of the cases that the trial court every instructed the jury regarding such presumption.
“The Supreme Court of Alabama has held that it is error for a trial court to instruct a jury concerning the establishment of a presumption where evidence has been presented to rebut the same.
“In Alabama Great Southern Railroad Co. v. Morrison, 281 Ala. 310, 202 So.2d 155 (1967), the Supreme Court held that the trial court committed prejudicial error when it read to the jury the provisions of Title 48, § 173, Code of Alabama 1940, stating that when any person is killed or injured or other property destroyed or damaged by the locomotive or cars of any railroad, the burden of pi'oof was on the railroad company to show a compliance with the requirements of section of the Code regulating the operation of railroads.
“In its opinion reversing the trial court for giving such charge, the Supreme Court stated:
“ ‘If our statute, § 173, is constitutional because it is like the Mississippi statute, then to be constitutional, § 173 must be construed like the Mississippi statute. Such construction, on reason and authority, forbids the trial court to instruct the jury that the burden of proof is on the railroad to acquit itself of negligence in a case where the evidence is conflicting on the issue whether defendant’s employees were guilty of negligence which proximately caused plaintiff’s injury.’
*1090 “In Peoples v. Seamon, 249 Ala. 284, 31 So.2d 88 (1947), a claim was asserted for the wrongful death of a child who was killed as a result of being struck by a taxicab. One of the matters in issue was whether the taxicab owned by the defendant Peoples was being operated by his agent at the time of the accident. Commenting on the presumption arising from proof of ownership, the Supreme Court stated:
“ ‘From proof of ownership of the cab by Peoples, nothing more appearing, the presumption is that it was being operated by one as his servant or agent in the line and scope of his authority. But this is an administrative presumption and takes the place of proof, and ceases to be effective when evidence of a contrary situation is offered. . . . ’
“Also see Comment Note — Effect of Presumption as Evidence or Upon Burden of Proof, Where Controverting Evidence is Introduced, 5 ALR 3d 19. Commenting on the effect of presumptions of law, the annotation refers to the view of Professor Wig-more as follows:
“ ‘[T]he peculiar effect of a presumption “of law” (that is, the real presumption) is merely to invoke a rule of law compelling the jury to reach the conclusion in the absence of evidence to the contrary from the opponent. If the opponent does offer evidence to the contrary (sufficient to satisfy the judge’s requirement of some evidence), the presumption disappears as a rule of law, and the case is in the jury’s hands free from any rule. . . .
“ ‘ • . . It is therefore a fallacy to attribute (as do some judges) an aritifical probative force to a presumption, increasing for the jury the weight of the facts, even when the opponent has come forward with some evidence to the contrary. . . . ’ Wigmore, Evidence 3rd Ed. Section 2491.
“In the present case now before this Court, evidence was presented that Clyde Letson had been an employee of Southern Natural Gas Company for approximately 5 years at the time the accident occurred. During that time, he had had occasion to work on a number of pressurized piping systems including a water system under pressure, steam under pressure, air under pressure and natural gas under pressure. His supervisor stated that it would be a fair statement that Clyde Letson’s day-to-day work involved working around pressurized piping systems of these various kinds; that each of these piping systems had various types and kinds of filters and that every one of those filters on those various pressurized piping systems had a bleeder valve located at the bottom of the filter to bleed the pressure off of that filter.
“To the knowledge of his supervisor White, Clyde Letson, during his 5 years of employment, actually worked with those various filters and had occasion to bleed them off by operating the bleeder valve at the bottoms of the filters.
“It is clear to the Court that substantial evidence was presented to support Fram Corporation’s contention that Clyde Letson was negligent and that his negligence caused or contributed to cause his injuries and death.
“Without discussing the issue whether plaintiff’s requested instruction was abstract, argumentative, incomplete and confusing, or erroneous as referring to the plaintiff rather than the plaintiff’s intestate, this Court concludes it was not error to refuse plaintiff’s requested charge and that the issues in this case were properly submitted to the jury. Furthermore, the evidence presented fully supports the verdict reached by the-jury.”
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C. J., and MADDOX, JONES and SHORES, JJ., concur.