508 So.2d 684 (1987)
Connie H. CREEL and George D. Creel
v.
Roger Steve BROWN.
85-403.
Supreme Court of Alabama.
April 24, 1987.
Rehearing Denied June 5, 1987.
*685 George H. Howell of Howell, Sarto and Howell, Prattville, for appellants.
James H. Anderson of Hill, Hill, Carter, Franco, Cole & Black, Montgomery, for appellee.
ALMON, Justice.
This appeal presents an issue of whether there was a scintilla of evidence of contributory negligence upon which to submit the question to the jury. At the conclusion of the trial of this suit for personal injuries and loss of consortium arising out of an automobile accident, the jury returned a verdict for defendant, finding contributory negligence on the part of the plaintiff.
Connie H. Creel and her husband, George D. Creel, own and operate the Prattville Memory Gardens Cemetery. On May 3, 1983, Mrs. Creel was driving her automobile on Highway 14, preparing to turn left into the cemetery. The first driveway provides access to the office, and Mrs. Creel testified that she switched on her left turn signal and prepared to turn left at this first driveway. She stated that she then saw her husband working in the cemetery in an area reached by the second driveway into the cemetery, so she proceeded along the highway to this second driveway, which she said was about 200 feet past the first one. When she reached it, she came to a stop to wait for oncoming traffic to clear her way, and as she waited an automobile operated by defendant Roger Steve Brown struck her automobile from the rear.
There was very little evidence as to liability, because most of the proof concerned Mrs. Creel's injuries. Therefore, we are able to quote substantially all of the proof regarding liability. The pertinent testimony by Mrs. Creel is as follows:
"Q. Where did you turn your signals on?
"A. Right before I got to the office building.
"Q. Why did you turn it on before you got to the office building?
"A. I was turning in the office. I was going to turn in the office, and I could see the next drive that George, my husband, was down there. We had both come to check on the burial, but I didn't know that he was there at that particular time checking. And I saw the van down there, and I just went straight on down there.
"Q. All right. Did your turn signals stay on?
"A. Yes, sir.

*686 "Q. Okay. Now, as you approached that driveway, how slow did your vehicle get?
"A. I stopped.
"Q. You came to a stop?
"A. Yes, sir.
"Q. All right. And how long were you stopped before the impact?
"A. Long enough for the oncoming cars to come past me.
"Q. Is that a few seconds or something like that?
"A. Probably, yes, sir."
Mr. Creel testified:
"Q. Did you see the accident?
"A. Yes, sir.
"Q. All right. And how did you become aware that it was going to occur?
"A. Well, one of the guys out there that was out at the grave site with us said, `There comes your wife.' I looked up, and when I looked up I saw him coming. As a matter of fact, when they hit I was half way there.
"Q. In other words, you had already started walking over there toward her?
"A. Started running over there toward her.
"Q. Could you tell he was going to hit her?
"A. Yes, sir.
"...
"Q. Now, at the time Connie was turning, did she have her turn signal on?
"A. Yes, sir.
"Q. Did you talk to Mr. Brown when you went over to see him?
"A. Yes, sir.
"Q. What did Mr. Brown say to you?
"A. He told me that he was on his way to a funeral and that he just naturally just looked out toward the cemetery and he didn't see her and he hit her.
"Q. Well, was he on the way to a funeral at your cemetery?
"A. No, sir, he was on his way to a funeral in Millbrook if I remember correctly.
"Q. Did he ever tell you how fast he was going?
"A. Yes, sir, if I remember correctly he said he was doing 45 or 50 somewhere along in there.
"Q. What is the speed limit there if you know?
"A. To tell you the truth I don't know.
"Q. It's about 45, isn't it?
"A. Yes, sir, I think it is."
The police officer who investigated the accident testified: "I asked both drivers could they tell me briefly what happened from their point of view. And he said he just didn't see her when she was trying to make her turn."
Mr. Brown's testimony on direct examination about the accident was as follows:
"Q. Tell the ladies and gentlemen of the jury what happened leading up to the accident.
"A. Well, actually I was driving down the street when I saw her car stop. She had the left blinker on. And it all happened in a split second and I bumped her.
"Q. All right, sir. Had you seen the blinker before then?
"A. I hit my brakes as soon as I could.
"Q. Yes, sir. My question is: Prior to that time had you seen her turn signal on?
"A. No, sir.
"Q. Okay. Was there any indication that she was going to stop?
"A. Not that I know of.
"Q. Okay. And your first reaction was hit your brakes?
"A. Right.
"Q. Okay. All right. Were you able to slow down any before you hit her rear end?
"A. Well, I'm sure I did. There was no tire marks. And the city didn't make a case against me.
"...
"Q. Now, did you see anybody there that could have seen the accident or told you that they saw it happen?
"A. No. George, George Creel.
"Q. All right. Did you see where he was prior to the accident?

*687 "A. Yes.
"Q. Where was he?
"A. Well, there was a little road going up in this cemetery and he and another person, another man, was preparing, or I assume they were preparing a grave."
Brown's testimony on cross-examination clearly demonstrates that there was no proof of any negligence on the part of Mrs. Creel which proximately contributed to the accident:
"Q. How close were you to Mrs. Creel's car as you first saw her when you approached the scene where the accident occurred?
"A. I can't really say. It happened in a split second, and I just can't say.
"...
"Q. Was her vehicle stopped when you first saw her?
"A. I think so. I'm not sure. I can't say either way.
"Q. Okay. Did Mrs. Creel have her left turn signal on when you saw her?
"A. She didwhen I saw the left signal I applied my brakes.
"Q. She did have it on then?
"A. Yes.
"Q. Okay. How fast were you going at the time of the accident?
"A. Well, I was driving within the speed limit. Along with the traffic. I might say twenty-five or thirty miles an hour.
". . .
"Q. Did Mrs. Creel's car appear to be waiting for some oncoming traffic?
"A. Oncoming traffic, yes.
"Q. And how long before the impact did you see Mrs. Creel's car?
"A. Pardon?
"Q. How long before the impact did you see Mrs. Creel's car?
"A. As I told you, as soon as I saw theI don't know. It all happened in a split second.
"...
"Q. Was there anything to obstruct your view of her vehicle?
"A. No."
At the close of the evidence the parties moved for directed verdicts. The trial court granted Brown's motion for directed verdict on the wantonness count and denied it otherwise. The court then said to the Creels' attorney:
"[Y]ou have asked for directed verdict. Of course, I am going to deny it.
"Mr. Howell: What about on the contributory negligence aspect of it?
"The Court: I am going to let the jury take it. It doesn't show how long she had had it on or anything. And that's up to them to determine whether she had it on at a required distance or not. There is no evidence of where she turned it on."
The court instructed the jury on contributory negligence and on the rules of the road, including the following, based upon Code 1975, § 32-5A-133:
"No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided.
"A signal of intention to turn right or left when required, shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning.
"No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.
"No person shall turn any vehicle without giving an appropriate signal; a signal of intention to turn left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning.
"If you find that the plaintiff failed to give the required left turn signal and the failure was the proximate cause of the collision and result of damage, then plaintiffs are barred from recovery."
Contributory negligence on the part of a plaintiff which proximately contributes to the plaintiff's injuries will bar *688 recovery. Brown v. Piggly-Wiggly Stores, 454 So.2d 1370 (Ala.1984). However, the defendant must plead and prove contributory negligence:
"The burden was upon the [defendant] to prove its plea of contributory negligence. Contributory negligence is matter purely defensive under our decisions, and it follows that there are no presumptions against a plaintiff of a want of due care and diligence on his part, and there is no burden on the plaintiff to prove affirmatively that he exercised due care and diligence."
Alabama Great Southern R.R. v. Evans, 288 Ala. 25, 30, 256 So.2d 861, 865 (1972); American Furniture Galleries, Inc. v. McWane, 477 So.2d 369 (Ala.1985); United States Fidelity & Guaranty Co. v. Jones, 356 So.2d 596 (Ala.1977).
While the question of contributory negligence is normally one for the jury, it has been held that "Where the facts are such that all reasonable [people] must reach the same conclusion, contributory negligence may be found as a matter of law." Brown v. Piggly-Wiggly Stores, supra, at 1372. See Alabama Digest, Negligence, Key No. 136(26). Conversely, if a defendant does not present a scintilla of evidence of contributory negligence, he should not be entitled to submit the question to the jury. Banks v. Harbin, 500 So.2d 1027 (Ala.1986).
Brown's evidence does not present a scintilla of evidence that Mrs. Creel was negligent. He testified that when he first saw her car it was stopped and the turn signal was on, not that she suddenly turned on her signal and came to a stop. He testified that it was apparent that she was stopped waiting for the oncoming traffic to clear. His testimony that the accident happened in a split second is not attributable to Mrs. Creel's operation of her vehicle, but to his perception of the situation. The trial court's observation that there was no evidence of how long she had had her signal on ignores her testimony that she had it on from the time she passed the office until the time she reached the second driveway. Even assuming that Mrs. Creel failed to give a signal for the required 100 feet (although there was no proof of this), such a failure under the facts of this case could not have proximately caused the accident, because Brown testified that when he first saw Mrs. Creel's automobile her signal was on.
Because there was not a scintilla of evidence that Mrs. Creel was negligent, the trial court should have granted a directed verdict for the Creels on Brown's plea of contributory negligence. Because the jury specifically returned the verdict for Brown on its finding of "Contributory negligence on [the] part of the plaintiff," the trial court should have granted the Creels' motion for new trial. The judgment denying that motion is reversed and the cause is remanded for a new trial.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX and BEATTY, JJ., concur.
HOUSTON, J., concurs specially.
HOUSTON, Justice (concurring specially).
Does a witness's isolated answer to a particular question, removed from the totality of the testimony of that witness which explains or qualifies that answer, satisfy our scintilla-of-evidence sufficiency standard? To me, it does not. I believe that we must review all of the testimony of a particular witness to determine whether there is any evidence to take a plaintiff's case or a defendant's affirmative defense to the jury. In this case, if I read only certain of Brown's answers to certain questions addressed to him, I could arrive at a metaphysical judgment that I saw a gleam, glimmer, spark, or trace of evidence from which I could logically infer that Mrs. Creel was contributorily negligent. If I analyze all of Brown's testimony and all other evidence introduced, that gleam, glimmer, spark, or trace disappears, and I am of the opinion that it would be logically unreasonable for a jury to conclude that Mrs. Creel was contributorily negligent. Therefore, I agree that the affirmative defense of contributory *689 negligence should not have been submitted to the jury.