HOUSTON, Justice
(concurring specially).
I agree with the majority that there was a scintilla of evidence of the requisite proof of causation between the placement of the ground rod and plaintiff John Wilson’s injury provided by the deposition testimony of Frederick N. Meyer, M.D., an orthopedic surgeon at University of South Alabama Medical Center.
I had more concern with whether there was a scintilla of evidence of Alabama Power Company’s initial negligence in placing the ground rod.
Clearly, Alabama Power Company’s “Distribution Standards,” a copy of which was an exhibit to William R. Dow’s deposition, showed that it was standard procedure for the top of the ground rod to be two inches below the surface of the ground, and those standards contained the following instruction: “Drive ground rod straight down next to pole. If cannot be driven full length, do not cut off, but staple to pole.” The evidence was undisputed that the ground rod in this case was next to a pole owned by South Central Bell and protruded two inches above the ground. The National Electrical Safety Code (NESC) provides that ground rod heads are to be flush with the ground or below ground level unless otherwise adequately protected. Mr. Dow, who was qualified as an expert, testified that ground rods were not required to be below ground surface if they were next to a pole and that they were “adequately protected” when next to a pole. When I first read the briefs, I thought that the Wilsons were basing Alabama Power Company’s initial legal liability on isolated exhibits to Mr. Dow’s deposition or on isolated answers to particular questions to Mr. Dow which were removed from the totality of Mr. Dow’s testimony. I am pursuaded that a witness’s isolated answer to a particular question, removed from the totality of that witness’s testimony that explains or qualifies that answer, does not satisfy our scintilla-of-evidence sufficiency standard. See Creel v. Brown, 508 So.2d 684 (Ala.1987) (Houston, J., concurring specially), and Williams v. Robinson, 512 So.2d 58 (Ala.1987) (Houston, J., dissenting, joined by Torbert, C.J., and Steagall, J.). Upon further study of the briefs and the record, under our scintilla-of-evidence standard and viewing the evidence in the light most favorable to the party against whom the summary judgment was granted, I concur with the majority. Mr. Dow’s deposition indicates that the protection contemplated by the NESC extends beyond protection of the rod to include protection of persons who may be injured by the rod’s protruding above the ground:
“Q. What are the hazards associated with leaving the head above ground?
“A. Well, the only hazard that I see is if it’s not protected and—
“Q. When you say ‘protected,’ being up against the pole?
“A. Yes_ If it’s in someone’s front yard, obviously, you present an object *111 for someone to trip over or hit with a lawn mower....
It is obvious from Mr. Dow’s deposition that while protection of the rod itself may be one reason for having the ground rod flush with the ground or two inches below the surface, that was not the only reason. Mr. Dow recognized that if the head of the rod is above the ground in certain places, it could cause someone to trip over it or hit it with a lawn mower. The protection contemplated by the NESC extended to protection of people who could come in contact with the rod as well as to protection of the rod itself. The pole Mr. Wilson slid down was owned by South Central Bell. It was erected on a lawn in Bay Minette, Alabama. Certainly it was foreseeable by Alabama Power Company that its and South Central Bell’s service technicians, such as Mr. Wilson, would climb this pole. Their ascent or descent from the pole could bring them in contact with the rod if it protruded above the ground. Obviously, there is evidence that this is what occurred, for Mr. Wilson in his answers to interrogatories stated:
“I unsafetied from the pole and took one step to the ground. I slid down the pole, twenty-one feet, six inches and landed with my left foot on a grounding rod which was standing out of the ground. This grounding rod had been installed by Alabama Power Company. The ball of my foot landed on the top of this grounding rod located at the base of the pole. My climber restricted my ankle from competely flexing and, combined with my weight shift, caused the bones in my ankle to shatter and also to break my leg.”
I agree that summary judgment should not have been granted.