Christopher DEMOS, Petitioner–Appellee,

v.

**W.E. JOHNSON, Warden, Respondents–Appellants.**

**No. 86–7726.**

United States Court of Appeals, Eleventh Circuit.

Jan. 15, 1988.

James B. Prude, Asst. Atty. Gen., Montgomery, Ala. for respondents-appellants.

Forrest S. Latta, Nettles, Barker, Janecky & Copeland, Mobile, Ala., for petitioner-appellee.

Before HILL and FAY, Circuit Judges, and ALLGOOD*, Senior District Judge.

FAY, Circuit Judge:

The State of Alabama challenges the district court's finding that the trial court and defense counsel made a pre-trial agreement to have petitioner examined by a psychiatrist. It also attacks the district court's determination that in the state trial court there was a violation under *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Petitioner, Christopher Demos, cross-appeals asserting that the district court improperly granted a retrial and that he is entitled to an unconditional release. Because we find that there was a *Pate* violation in the state trial court, we affirm.

---

* Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

## I. BACKGROUND

At approximately 11:00 p.m. on August 20, 1975, Christopher Demos picked up his ex-wife, Edna Demos, and thirteen-year-old stepdaughter at a Taco House Restaurant in Pensacola, Florida. He drove them to their home in Baldwin County, Alabama, and accompanied them into Edna Demos' house.

Brandishing a kitchen knife he had taken from the Taco House, Demos forced his ex-wife and stepdaughter to perform unnatural sex acts on each other and on him. Early the next morning Demos stabbed and killed his ex-wife. Demos' stepdaughter wrapped herself in a quilt, ran to a neighbor's home, and told her of the murder. The neighbor notified the police. When the police arrived, they found Demos nude, under a hall table drinking beer and sniffing a lacquer solvent.

On October 15, 1975, the grand jury of Baldwin County, Alabama, indicted Christopher Demos, charging him with murder in the first degree by stabbing his ex-wife, Edna Demos, to death. At his arraignment before Judge Telfair Mashburn, Demos pleaded not guilty by reason of insanity. Demos later filed a motion for an examination by a private psychiatrist and a motion stating that he was unable to aid in his defense. At the evidentiary hearing Demos' mother testified that he had regularly sniffed glue since he was twelve years old. She stated that when Demos sniffed glue, he was a completely different person than when he was not on glue. She opined that when on glue, petitioner had violent, depressive, and uncontrollable periods. During cross-examination, she detailed a history of petitioner's criminal activity since becoming dependent on glue. The court also learned that in 1969 two Ohio mental hospitals treated Demos for disorders caused by the chronic abuse of "toluene," the active ingredient in glue and other solvents. After the hearing the court denied both motions and the case proceeded to trial. On November 13, 1975, the jury convicted De-

mos and sentenced him to life imprisonment. The Alabama Court of Criminal Appeals affirmed the conviction.

On July 6, 1981, Demos filed a petition for writ of error coram nobis in the Circuit Court of Baldwin County, Alabama which the court denied. The petition alleged that the trial court deprived Demos due process of law when it denied him a psychiatric evaluation. The Alabama Court of Criminal Appeals affirmed the denial without opinion. The Supreme Court of Alabama denied Demos' petition for certiorari.

Having exhausted his state remedies, Demos filed a habeas petition in the United States District Court for the Southern District of Alabama on October 12, 1983. As with his state petition, Demos alleged a denial of due process because the state trial court did not grant him a mental examination prior to trial. The district court eventually ordered four evidentiary hearings on this petition. On November 26, 1984, the district court determined the existence of a *Pate* violation. After the final hearing, the district court also found that a pre-trial agreement existed, and that the state trial court breached this agreement when it failed to send Demos to a state mental hospital for a competency examination.[1] The district court granted petitioner's release subject to retrial by the state.

## II. DISCUSSION

### A.

The State of Alabama contends, contrary to the district court's finding, that the state trial court did not breach a pre-trial agreement to provide Demos with a psychiatric examination. Petitioner, on the other hand, asserts that the transcript of the 1975 proceedings supports his claim that the trial judge did reach such an agreement with defense counsel.

The record does not reveal that the trial court ever agreed to provide a psychiatric examination. It does disclose however,

two motions filed by defendant. The first motion sought appointment of an "independent" psychiatrist to examine petitioner. The second motion deleted the word "independent." The only indication of an agreement in the record occurred at the hearing for these motions before Judge Harry J. Wilters. There, the defense counsel advised the court, "I filed a motion asking ... that this boy be examined by a private psychiatrist. Then I was told, and understood, that if I revised that motion to have him sent to Searcy [a state mental hospital], it would be agreed to." Volume I of Record at 4 (hearings on motions, November 5, 1975). The record discloses that the agreement allegedly occurred at Demos' arraignment with Judge Mashburn sitting. After the arraignment the case was transferred to Judge Wilters for trial. Judge Wilters denied defendant's motions for a psychiatric examination. The district court found that Judge Wilters breached a pre-trial agreement that defense counsel made with Judge Mashburn.

To support his claim of a binding pre-trial agreement, Demos relies on *Acosta v. Turner*, 666 F.2d 949 (5th Cir. Unit B 1982).[2] In *Acosta*, the court made an agreement to enter the medical report on defendant's competency to stand trial into the record once the court received the report from the examining physician. Before the court obtained the medical report, defendant's counsel agreed to stipulate to defendant's competency to stand trial after the trial judge promised he would vacate the entire proceedings if the medical report gave any indication that the defendant was incompetent. *Id.* at 953. The court never received the report, and thus never determined the defendant's competency. The jury found the defendant guilty. On appeal the *Acosta* court held that the state trial judge erred when he failed to assure that the medical report was entered into evidence.

1. The competency hearing ordered by the district court was never held because the district court granted the writ pursuant to its finding on the agreement.

2. Decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981 are binding precedent in this circuit. *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982).

The former Fifth Circuit recognized in *Acosta* that the defendant had been induced to act to his detriment by relying on the court's agreement. Analogizing the situation to a plea bargaining agreement, the court stated: "If a defendant is induced to plead guilty by a promise of some performance by the prosecution, the defendant has a constitutional right to specific performance of the bargain." *Acosta*, 666 F.2d at 953 (citing *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)).

■ We are not persuaded by petitioner's argument. The policy considerations which led to the decision in *Acosta* are not present in this proceedings. *Acosta* does not apply to situations, such as the alleged agreement in this case, where the court offered no inducement and where petitioner did nothing to his detriment. Further, state trial judges have the authority to change rulings, or to change their minds about rulings. A receiving judge can do this as well. We find that in this case the agreement between defense counsel and the state trial judge was not binding. Therefore, the court did not have to provide Demos with a psychiatric examination on these grounds. We need not reverse, however, because we agree with the district court's finding of a *Pate* violation in the state trial court.

*Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), requires a court to *sua sponte* conduct an inquiry into a defendant's mental capacity whenever the court learns of facts or events which raise a reasonable ground to doubt defendant's competency. *Id.* at 387, 86 S.Ct. at 843; *see also Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) (explaining *Pate*). Such information "need not be presented in a formal motion nor argued by

defense counsel nor be presented to the judge in the form of admissible evidence." *Lokos v. Capps*, 625 F.2d 1258, 1260 (5th Cir.1980).[3] The issue is whether, in light of what was known to the trial court, "the failure to make further inquiry into petitioner's competence to stand trial, denied him a fair trial." *Drope*, 420 U.S. at 174–75, 95 S.Ct. at 905. Under Alabama law, as in *Pate*, when the facts known to the trial court raise a reasonable ground to doubt petitioner's competence, the court must empanel a jury to conduct a competency hearing. Ala.Code § 15–16–21 (1975); *cf. Pate*, 383 U.S. at 385, 86 S.Ct. at 842 (citing the same procedural requirement under Illinois law where there is a bona fide doubt). In reviewing a *Pate* challenge, we must make an independent review of the record to determine if the state court's finding was correct. *See Price v. Wainwright*, 759 F.2d 1549, 1552 (11th Cir.1985).

■ In the instant case, the state trial court did not conduct a *Pate* hearing even though it was aware of facts which should have raised questions concerning Demos' competence to stand trial. As stated, the state trial court denied Petitioner's motions for psychiatric examination. According to the trial judge, petitioner presented no evidence that he was insane when committing the crimes or that he was unable to aid in his defense. In addition, the judge noted that Demos had earlier stated to the court that he could mentally assist in the conduct of the trial. The judge said this verified that Demos was competent. However, at the evidentiary hearing the trial court learned from the testimony of Demos' mother that he had been sniffing glue since he was twelve years old.[4] The hearing also disclosed a history of irrational, frequently criminal behavior, and two occasions of prior psychiatric treatment.[5] Moreover, at tri-

**3.** The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**4.** In rebuttal, the State presented the Baldwin County Jailer, Jimmy Hartner, who testified that petitioner did not have access to any glue while incarcerated at the jail. He further testified that petitioner did nothing out of the ordinary while he was confined at the jail.

**5.** During the few days between arraignment and trial, defense counsel sought a continuance to obtain Demos' records from two Ohio mental institutions. The court denied this request. We are not surprised that defense counsel was unable to obtain these records until long after the

al the evidence showed that Demos was high on toluene when he committed the crime.[6] We find that the facts before the trial court raised a reasonable ground to doubt Demos' competency to stand trial. We also find that the trial court's failure to grant a psychiatric examination or to make further inquiry into the accused's competence constituted a *Pate* violation and denied him a fair trial.

### B.

Defendant cross-appeals the district court's granting of a retrial. He argues that the state trial court substantially impaired his ability to maintain a viable insanity defense twelve years later due to the non-existence of any expert medical examination at or near the time of the offense. Petitioner contends that because the state can no longer assure him a fair opportunity to present his insanity defense, the state must now release him unconditionally. The record is void of any district court finding that a meaningful *nunc pro tunc* inquiry can or cannot be made regarding petitioner's competency at the time of the offense or at the previous trial. Accordingly, we will not address this issue at this time.

AFFIRMED.

---

trial. Apparently, one institution destroyed Demos' records, but the other set is now available.

**6.** Once this evidence came out at trial, defense counsel moved for a mistrial due to the court's erroneous denial of a continuance and of a psychiatrist to aid in petitioner's defense. The court denied these motions. Curiously, the trial judge instructed the jury on the insanity defense.