The appellant, William Lee Slagle, was convicted of murder, in violation of § 13A-6-2, Code of Alabama 1975, as charged in the indictment. The appellant was sentenced to life imprisonment.
In the early morning hours of Thursday, September 21, 1989, the appellant stabbed 20-year-old Rex Copeland to death in the victim's Shelby County apartment. The appellant was the coach of Samford University's nationally-ranked debate team, and the victim was a member of the debate team. In preparation for an upcoming debate, the Samford team had been practicing during the early evening hours of September 20, 1989. Testimony indicated that following the practice the appellant commented that *Page 194 
the victim was not well prepared. The victim told his debate partner, Scott Barber, about the appellant's dissatisfaction. The victim also told Barber that no matter how much he did, it never seemed to be enough to satisfy the appellant.
Barber and the victim were supposed to meet the appellant at the debate room on Thursday. When Barber arrived at the room he found a note from the appellant taped to the door. The note stated that the appellant would be unable to meet the victim and Barber on Thursday. Barber attempted to call the victim several times, and left messages on his telephone answering machine. On Friday, September 22, 1989, Barber and the victim's girlfriend discovered the victim's body at his apartment.
Following the discovery of the victim's body, the appellant contacted students to inform them about the victim's funeral. He also consoled and expressed his regrets to students and to the victim's family.
The appellant rented an automobile at the Birmingham airport on September 27, 1989. The appellant did not return the automobile to the rental agency, but it was later recovered at the Los Angeles International Airport. The appellant was not heard from for the next six months. On April 3, 1990, the appellant voluntarily turned himself in to the Shelby County Sheriff's Department. The appellant wrote two letters prior to his voluntary surrender to the sheriff's department explaining that he had killed the victim in self-defense.
The evidence showed that the appellant tried to cover up the killing. The appellant wiped blood and fingerprints off surfaces in the apartment. He placed the knife used to stab the victim and some bloody towels in a plastic bag. The appellant cleaned himself up, turned off the apartment lights, and locked the apartment door. The appellant later called the victim's apartment and left a message on the answering machine.
The killing and the subsequent trial received significant media coverage, both statewide and nationally. The case was featured on television's "Current Affairs" and "Unsolved Mysteries."
 I
The appellant contends that the trial court committed reversible error by denying his motion for change of venue. The appellant argues that due process required the trial court to grant his motion for change of venue. Specifically, the appellant argues that the Shelby County Sheriff, J.F. "Buddy" Glasgow, orchestrated false and inflammatory pretrial publicity that so pervaded the community as to render it virtually impossible to have a fair trial before an impartial jury. The Alabama Supreme Court has held:
 "Absent a showing of abuse of discretion, a trial court's ruling on a motion for change of venue will not be overturned. Ex parte Magwood, 426 So.2d 929, 931 (Ala.), cert. denied, 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1355 (1983). In order to grant a motion for change of venue, the defendant must prove that there existed actual prejudice against the defendant or that the community was saturated with prejudicial publicity. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Franklin v. State, 424 So.2d 1353
(Ala.Crim.App. 1982). Newspaper articles or widespread publicity, without more, are insufficient to grant a motion for change of venue. Anderson v. State, 362 So.2d 1296, 1298 (Ala.Crim.App. 1978). As the Supreme Court explained in Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642-43, 6 L.Ed.2d 751
(1961):
 " 'To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. . . .'
 "The standard of fairness does not require jurors to be totally ignorant of the facts and issues involved. Murphy v. Florida, 421 U.S. 794, 799-800, *Page 195 95 S.Ct. 2031, 2035-2036, 44 L.Ed.2d 589 (1975). Thus, '[t]he proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination.' Anderson v. State, 362 So.2d 1296, 1299
(Ala.Crim.App. 1978)."
Ex parte Grayson, 479 So.2d 76, 80 (Ala. 1985). The appellant relies on the "presumed prejudice" standard to support his argument. Under this standard, the appellant claims that the prejudicial publicity was so widespread and inflammatory that it was virtually impossible to have a fair trial by an impartial jury drawn from the Shelby County community and that jury prejudice should be presumed, dismissing the need to establish further bias. The appellant bases his argument on the widespread media coverage of the killing and the impact of that coverage on prospective jurors.
The appellant's argument is without merit. The State contends that the appellant's reliance on the "presumed prejudice" standard creates an extremely heavy burden for the appellant. We agree. The Eleventh Circuit Court of Appeals stated the burden as follows:
 "At the outset, we emphasize the fact that the presumptive prejudice standard recognized in Rideau [v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963)] is only "rarely" applicable. Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 554, 96 S.Ct. 2791, 2800, 49 L.Ed.2d 683 (1986), and is reserved for an "extreme situation." Mayola v. State of Alabama, 623 F.2d 992 (5th Cir. 1980). In short, the burden placed upon the petitioner to show that pretrial publicity deprived him of the right to a fair trial before an impartial jury is an extremely heavy one."
Coleman v. Kemp, 778 F.2d 1487, 1537 (11th Cir. 1985).
The mere fact that publicity and media attention were widespread is not sufficient to warrant a change of venue. Rather, Ex parte Grayson held that the appellant must show that he suffered actual prejudice or that the community was saturated with prejudicial publicity. While it is true that most of the jurors had heard of the case and had probably speculated about the case, there was no showing during the extended voir dire that the people of Shelby County had deep-felt prejudices against the appellant. Those jurors who did express prejudices were excluded from the jury. "To justify a presumption of prejudice under this standard, the publicity must be both extensive and sensational in nature. If the media coverage is factual as opposed to inflammatory or sensational, this undermines any claim for a presumption of prejudice."United States v. Angiulo, 897 F.2d 1169, 1181 (1st Cir. 1990). Here, the appellant presented no evidence to show that the media coverage was not factual. Additionally, the appellant failed to prove that the media attention inflamed or saturated the community or that there was any personal or emotional tide against him.
There simply has been no showing that there was an abuse of discretion by the trial court. The trial court went to great lengths to ensure that the pretrial publicity had not biased the jurors and that any opinions or notions of individual jurors could be placed aside. Throughout the voir dire examination and questioning in this case, there was no indication that the jurors could not lay aside any preconceived impressions and render a fair verdict based on the evidence presented at trial. When the court examined the jury, the court asked if anyone had heard of the case in question. Those who indicated familiarity with the case were excluded, and the court then allowed individual voir dire on the remaining jurors. During this individual voir dire, the trial judge excluded several jurors for cause. In this case, the trial court, by conducting extensive voir dire examination, took the proper course to determine whether adverse publicity may have prejudiced the prospective jurors. The questioning and examination of prospective jurors covered 680 pages of the trial transcript. The appellant offers no evidence to show that any of the jurors was unable to render a fair and impartial verdict based on the evidence produced at trial. *Page 196 
The trial court did not err in denying the appellant's motion for change of venue.
 II
The appellant argues that the trial court abused its discretion in denying his challenge for cause of prospective juror L.T. Specifically, the appellant contends that L.T. had strong feelings about the case, believed that the appellant was guilty of murder, had heard that the appellant was a homosexual and that the appellant was guilty, and repeatedly equivocated when asked if he could set his belief of the appellant's guilt aside.
The examination of L.T. covers approximately 12 pages in the record. The record shows that L.T. admitted that he had heard of the case but stated that he had not followed it very closely. He had heard that there had been a murder and that a great deal of time had passed before the accused was located. Additionally, he had heard, probably from an individual, something about a homosexual relationship between the victim and the appellant. L.T. said that most of his information was received from occasional newspaper articles and from other individuals talking about the case. L.T. stated that the term "murder" did not mean anything to him legally and that the fact that a student died of stab wounds led him to believe that the killing was murder. He had no opinion as to who committed the murder. L.T. indicated that even though he associated the appellant's name with the case because of the media coverage, he believed that the appellant was innocent until proven guilty. Additionally, L.T. told the court that he did not have enough information to form an opinion as to whether the appellant was guilty. When asked whether he could disregard everything he had heard about this case, L.T. said, "Yes. I believe I could." Similarly, L.T. answered that he believed he could follow his oath as a juror and not consider what he had seen or heard through the media. L.T. indicated that he could listen to the evidence presented at trial and that he could presume the appellant innocent throughout each stage of the trial.
In response to defense counsel's questioning, L.T. stated that he did not believe that anybody could truthfully deny that they still remembered the facts heard about the case from friends or through the media. However, he did state that some of the things he had heard had been forgotten and some of the opinions he might have had changed because of the time that had elapsed since the killing. L.T. stated that he had had an emotional response to the murder merely because a life had been lost. L.T. was asked about his response to the reports of homosexuality, and he answered that even though it was not a lifestyle he chose to lead, it "doesn't have anything to do with murder." He did not feel the issue of homosexuality would be a factor in deciding the issue of murder or in his ability to be impartial.
It is well established in Alabama that trial courts are accorded broad discretion in determining the qualifications of jurors. This court has held that "a trial court's ruling on challenges for cause based on bias is entitled to great weight and will not be disturbed on appeal unless clearly shown to be an abuse of discretion." Clark v. State, 443 So.2d 1287
(Ala.Crim.App. 1983). Furthermore, the Alabama Supreme Court has held that the "qualification of a juror is a matter within the discretion of the trial court, and . . . a reversal is not appropriate absent abuse of discretion." Knop v. McCain,561 So.2d 229 (Ala. 1989).
"The test to be applied in determining whether a juror should be removed for cause is whether the juror can eliminate the influence of his previous feelings and render a verdict according to the evidence." Rowell v. State, 570 So.2d 848, 855
(Ala.Crim.App. 1990). In addition, Rowell held that "ordinarily a juror is not disqualified where it appears that he is willing to follow the instructions of law given by the trial court and is able to decide the case impartially according to the evidence notwithstanding his scruples."
The Alabama Supreme Court has noted:
 "Understandably, as it is often true in such cases, this juror used language such *Page 197 
as 'I would hope that I would be fair,' and 'I hope [I would not be unfair]'; and, when taken out of context and standing alone, they appeared to be expressions of equivocation."
Ex parte Beam, 512 So.2d 723 (Ala. 1987).
Taking L.T.'s responses in context, it is clear that he believed he could eliminate his previous feelings about the case and decide the case based on the evidence as presented from the witness stand. Furthermore, it is clear that L.T. was willing to follow the instructions of the trial court. Indeed, L.T. responded affirmatively when asked about the above matters. The trial court did not abuse its discretion and correctly denied the appellant's challenge for cause of prospective juror L.T.
 III
Finally, the appellant contends that the State failed to establish a prima facie case of murder and that the trial judge erred in denying his motion for judgment of acquittal because, he argues, the State failed to present sufficient evidence to sustain his conviction. The appellant claims that the State established a prima facie case of manslaughter but that it failed to establish a prima facie case of murder.
The trial court accurately charged the jury on the statutory definitions of the crimes of "murder" and "manslaughter," in accordance with § 13A-6-2, Code of Alabama 1975. The court charged the jury as follows:
 "In this case the defendant is charged with intentional murder. A person commits the crime of intentional murder if he causes the death of another person, and in performing that act or acts which cause the death of that person, he intends to kill that person. A person does not commit murder, however, if he was moved to an act by a sudden heat of passion caused by provocation recognized by law, and before there had been a reasonable time for the passion to cool and reason to reassert itself.
 "A lesser-included offense to murder is the charge of manslaughter. A person commits the crime of manslaughter if he causes the death of another person under circumstances that ordinarily would constitute intentional murder except that he caused the death due to a sudden heat of passion caused by provocation recognized by law and before a reasonable time for the passion to cool and reason to reassert itself."
The appellant's conviction was based on circumstantial evidence. In this case, "the State presented sufficient circumstantial evidence from which a jury could reasonably find that the evidence excluded every other reasonable hypothesis but that of guilt." Perkins v. State, 580 So.2d 4, 6
(Ala.Cr.App. 1990). Additionally, this court has held that:
 "In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude."
Cumbo v. State, 368 So.2d 871 (Ala.Crim.App. 1978), cert.denied, 368 So.2d 877 (Ala. 1979). Viewing the State's evidence presented to the jury, under the principles set out in Cumbo, we conclude that when viewed in the light most favorable to the prosecution, that evidence was sufficient to allow the jury to reasonably find that the evidence excluded every reasonable hypothesis except that of the appellant's guilt of murder. The State's evidence established the following: On September 22, 1989, the body of the victim, Rex Copeland, was found with 12 stab wounds and 29 defensive wounds. Two of the wounds penetrated the victim's heart, liver, and lungs. Each of these wounds was severe enough to cause death in a short period of time. The circumstantial evidence points to the appellant's guilt of murder. Viewing the evidence in the light most favorable to the prosecution, the evidence presented at trial was sufficient to sustain the appellant's conviction for murder. *Page 198 
The judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur.