William Warren Holland, the appellant, was convicted of two charges of robbery in the first degree. He was sentenced as a habitual offender to imprisonment for life without parole in each case. Through appointed counsel, the appellant raises four issues on this appeal from those convictions.
 I.
The appellant argues that he was denied his constitutional right to a speedy trial. The significant facts are set forth in chronological order as follows:
 September 9, 1987, and December 31, 1987: Two separate robberies were committed in Montgomery, Alabama: Adams Pharmacy on Mitchell Drive was robbed on September 9, 1987, and Adams Pharmacy on Normandie Drive was robbed on December 31, 1987.
 January 13, 1988: The appellant was arrested and charged with two instances of robbery in the first degree — pharmacy robbery.
 April 1988: The appellant was indicted for "pharmacy robbery." R. 855.
 1988: The "Pharmacy Robbery Act of 1982," Ala. Code 1975, § 13A-5-50 through § 13A-8-52, statute was declared unconstitutional by the circuit court. See Ex parte Coker, 575 So.2d 43 (Ala. 1990).
 June 7, 1989: Three indictments were returned against the appellant charging robbery in the first degree. Two *Page 1315 
involved Adams Pharmacies — CC89-2393 and 2394. The third involved Price's Drugs — CC-89-2392.
 January 12, 1990: The appellant was arraigned in all three cases.
 January 16, 1990: The two indictments in CC-89-2393 and 2394 were ordered consolidated for trial.
 January 17, 1990: The appellant filed a motion requesting the trial court "to continue the trial of this case and to set the trial of this case to follow the trial of case no. CC 88-1385/89-2391,2." Supp.R. 14. Those cases involved another defendant.
 February 5, 1990: The appellant filed a motion for a continuance (dated January 31, 1990). R. 502, 508; Supp.R. 25, 34.
 January-February 1990: Following the order of consolidation, the appellant filed a number of motions including the following: a motion to produce; a motion for discovery; a motion for an evidentiary hearing; a motion for a line-up; a motion for a continuance; a motion for an order authorizing beard growth for identification purposes at all identification proceedings, hearings, and trial (pro se); a second motion for continuance (pro se), additional motions for evidentiary hearings; and numerous other pro se motions.
 April 16, 1990: The appellant requested a motion for continuance (which was actually marked filed April 20, 1990), which was granted. Trial was re-set for June 21, 1990.
 April 18, 1990: The appellant was tried and convicted for the robbery of Price's Drugs — CC89-2392. He was sentenced as a habitual offender to imprisonment for life without parole.
 March 29, 1991: The appellant's conviction for the robbery of Price's Drugs was reversed on appeal. Holland v. State, 588 So.2d 543 (Ala.Cr.App. 1991)
 April 23, 1991: Trial was set for May 1, 1991.
 May 1, 1991: On the day the appellant's case was scheduled for trial, defense counsel made an oral motion to dismiss based on the alleged denial of a speedy trial. That motion was denied. The appellant was convicted on May 2, 1991.
 July 9, 1991: The appellant's "motion to dismiss for post-indictment delay and prosecutorial misconduct violating defendant's constitutional rights" was filed in the office of the circuit clerk. R. 853. This motion was dated April 29, 1991.
In deciding this issue, we apply the "balancing test" set out in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101
(1972).
The length of delay in this case between the appellant's arrest and his trial was 40 months. No reason was offered in explanation for the delay. No testimony was presented at the hearing on the motion to dismiss. A portion of the delay can be attributed to the fact that the statute under which the appellant was originally indicted was declared unconstitutional. Additionally, the appellant, both pro se and through his appointed counsel, filed a large number of motions including motions seeking discovery and expert analysis, requests for continuances, and a motion to have his case tried after that of his codefendant. See Goodman v. State,588 So.2d 550 (Ala.Cr.App. 1991). There is nothing in the record that even implies that any delay resulted from any improper motive on the part of the prosecution.
The appellant asserted his right to a speedy trial only immediately before his trial jury was selected.
 " 'The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.' . . . The failure of a defendant to assert his right to a speedy trial, however, does not demonstrate that there was no constitutional violation. . . . However, the Supreme Court has emphasized that 'the failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.' . . . The timeliness, vigor and frequency with which the right to a speedy trial is asserted *Page 1316 
 are probative indications of whether a defendant was denied needed access to a speedy trial over his objection."
Redd v. Sowders, 809 F.2d 1266, 1270-71 (6th Cir. 1987).
At the same time the appellant made his oral motion for a speedy trial he also requested a continuance. Immediately before trial, the following occurred:
 "THE COURT: All right. How am I going to reconcile the motion to dismiss and the motion to continue that you've got me in a dilemma with today?
 "MR. GILL [defense counsel]: Well, your Honor, the basis for the motion to continue is the fact that we have been deprived of discovery in this case up until just fairly recently. I did not acquire discovery in this case until March the 26th of 1991. That's the first time that I acquired the information that was ordered to be produced on December the 12th, 1990. This man was arrested on a Montgomery arrest warrant on or about January 13 or 14, 1988.
 "THE COURT: Let me ask this question. Are y'all willing to waive any speedy trial issue if we reset the case, if I grant your motion to continue?
 "THE DEFENDANT: Judge, the — the manipulation of the speedy trial issue — All I have ever wanted in this case was a fair trial. And the State —
"THE COURT: You are not answering my question.
 "THE DEFENDANT: I'm trying to answer the question, Judge. All I have wanted was a fair trial. I have sought discovery from Mr. Belser [the prosecutor]. I've got numerous discovery motions pending. Never got a response out of Mr. Belser. And the reason I never asserted the speedy trial issue was because I was afraid if I did that I would never get the discovery. If I waive —
 "THE COURT: You still haven't answered my question. My question, I think, is pretty simple, now. And I don't know if you are going to answer it or if your lawyer is going to answer it. The question is this. Y'all are making a motion to continue the case. Now, if I do that, you have also got a motion for speedy trial. So which one do you want? Do you want a continuance? Do you want a speedy trial? Because we are set to try this case right now. Y'all tell me which one you want.
 "THE DEFENDANT: Judge, I would like to point out to you that I'm not ready to go to trial at this time on this case."
". . . .
 "THE COURT: . . . You want this case continued or do you want a speedy trial? Now, which of the two do you want?
 "THE DEFENDANT: I want — I want an opportunity to make a defense, Judge.
". . . .
 "THE DEFENDANT: My only objection is I'm not able to bring a defense today and that —
 "THE COURT: Mr. Holland, you are the one that has been pursuing a speedy trial and you are going to get a speedy trial. This is the first opportunity I have had to try your case.
 "THE DEFENDANT: I never asked for a speedy trial. All I wanted was a fair trial and the evidence to work with to go that way — to get that."
R. 11-16, 77-78.
It is clear from the foregoing that the appellant wasnot vigorous in his assertion of his right to a speedy trial. Further, his request for a speedy trial was directly contradicted by his request for a continuance.
Finally, there is no evidence that the appellant was prejudiced by the delay. Under other circumstances, we might assume that a delay of this length was presumptively prejudicial. See Ex parte Carrell, 565 So.2d 104 (Ala. 1990), cert. denied, 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701
(1991). However, here the record shows that the appellant was not prepared for trial. The appellant requested a continuance and announced that he was "not ready to go to trial at this time on this case." Furthermore, after the State had rested its case, the appellant requested that defense counsel be allowed to interview defense witnesses. R. 351-52. *Page 1317 
Under these circumstances, we find that the trial court acted within its discretion in denying the appellant's motion to dismiss.
 II.
The appellant contends that his arrest was illegal because the warrant of arrest was improperly executed. On appeal, the appellant argues "that the trial court reversibly erred in denying his Motion to Dismiss, on the grounds of illegal arrest effected by illicit execution of the arrest warrants; as such execution was violative of Alabama statutory law." Appellant's brief at 53.
The appellant was arrested on January 13, 1988, in Mobile County pursuant to arrest warrants issued by a Montgomery County magistrate. The appellant was photographed in Mobile and that photograph was introduced at trial to show the appellant's appearance shortly after the commission of the robberies.
Ala. Code 1975, § 15-10-10, provides:
 "A warrant of arrest shall be executed in the county in which it was issued, unless the defendant is in another county. When the defendant is in another county, it may be executed therein on a written endorsement on the warrant by a judge or magistrate of that county signed by him, to the following effect: 'This warrant may be executed in _____ county.' "
The trial court properly denied the appellant's motion to dismiss. "An illegal arrest 'does not void a subsequent conviction,' . . . does not bar prosecution on an indictment returned after the arrest, . . . and does not entitle the accused to a dismissal of the charges against him. . . ."Atwell v. State, 594 So.2d 202, 208 (Ala.Cr.App. 1991), cert. denied, 594 So.2d 214 (Ala. 1992).
On appeal, the appellant has not argued error in the admissibility of the photographs of the appellant taken on January 14, 1988, after his allegedly illegal arrest in Mobile. Were this Court to assume that the appellant's arrest was improper because the warrant of arrest issued in Montgomery County was not endorsed by a judge or magistrate from Mobile County and further assume that the admission of the Mobile photographs was error because those photographs constitute derivative evidence obtained as a result of the illegal arrest, there would still be no cause for a reversal of the appellant's conviction.
As best this Court can determine, the photographic lineups were held on January 7, 8, or 9, 1988 (R. 265) — before the appellant's arrest. Therefore, the Mobile photographs could not have been used in those lineups. At trial, prosecution witnesses Joseph Lance Wells and J.T. Hunt, on redirect examination, identified the Mobile photographs as showing the appellant's actual appearance shortly after the robberies. This identification testimony was admitted as proper rehabilitation. See C. Gamble, McElroy's Alabama Evidence § 177.01(6)(a) (4th ed. 1991).
However, three witnesses for the prosecution — Wells, Hunt, and Patricia Welch positively identified the appellant at trial and also were properly permitted to testify on redirect examination that they had previously identified the appellant in a police photographic lineup. Their identification of the appellant as the man who had robbed the pharmacies and as the man they identified in the lineup was positive and unequivocal. Under these circumstances, the error, if any, in admitting the Mobile photographs and in allowing them to be used to rehabilitate two prosecution witnesses does not warrant a reversal because the appellant's identity was firmly established by the competent, untainted identification testimony without consideration of the Mobile photographs. SeeUnited States v. DeSimone, 660 F.2d 532, 543 (5th Cir. 1981), cert. denied, 456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed.2d 444
(1982). Here, the error, if any, was harmless. See Rule 45, A.R.App.P.
 III.
The appellant filed a pro se "motion to preclude the prosecution's use of pretrial and in-court identification" and defense *Page 1318 
counsel filed a motion in limine to preclude the State's use of "[a]ny post-arrest [or] photo identifications" of the appellant. Our review of the record convinces this Court that any "granting" of either motion by the trial judge prior to trial was conditional and subject to the judge's reconsideration when and if the prosecution attempted to introduce into evidence the testimony alleged to be objectionable. Moreover, even if the trial judge did grant both motions, he had the inherent right to reconsider that ruling at any time during the course of the trial. "[I]t cannot be disputed that courts of record have the inherent power to set aside and vacate their orders and judgments, although a judge should not merely 'change his mind' without sufficient cause or reason." Carter v. State, 435 So.2d 137, 141 (Ala.Cr.App. 1982).
In this case, the photographic lineup procedures were not unnecessarily suggestive or conducive to irreparable mistaken identification. "[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside . . . only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377,384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). Although the appellant made repeated allegations of coercion and unnecessary suggestiveness in the pretrial identification procedures, there is absolutely no evidence of such. We fully agree with the finding of the trial court that there is no evidence of any "improper photo lineups, coaching witnesses, [or] encouraging witnesses to pick out the wrong person." R. 312. The appellant's allegations have absolutely no factual basis.
 IV.
The indictment charging the December robbery alleged the theft of the drug "pethidine." Even though the testimony at trial established a theft of the drugs Dilaudid, morphine, and Demerol, there was no material variance between the indictment and proof.
"[O]ur Alabama case law is clear that there must be amaterial variance between indictment and proof before a conviction will be overturned for that reason." Ex parteCollins, 385 So.2d 1005, 1009 (Ala. 1980) (emphasis in original).
Demerol is "a brand of meperidine." The Random HouseDictionary of the English Language, 529 (2d ed. 1987). "Demerol" is the "Breon . . . brand . . . of Meperidine Hydrochloride." USAN [United States Adopted Names] 10 and theUSP [United States Pharmacopeial Convention, Inc.] Dictionaryof Drug Names, 41 (1972). "Pethidine Hydrochloride" is the "[National Formulary name] for Meperidine Hydrochloride." USAN10 and the USP Dictionary of Drug Names, 46 (Supp. 1973). We find that there is no material variance between an indictment alleging the theft of pethidine and proof showing the theft of Demerol where both drugs are essentially different names for the drug meperidine. See McCall v. State, 487 So.2d 1375
(Ala.Cr.App.), cert. denied, 479 U.S. 856, 107 S.Ct. 195,93 L.Ed.2d 127 (1986).
 "This court has stated the policy behind the fatal variance rule as follows: 'The purpose of the rule is for identification and notice to defendant, and if those purposes are met no substantial injury to defendant results.'. . .
". . . .
 "The law of this state is well settled that '[t]here is no material variance where there is proof of so much of an indictment as shows the defendant committed a substantial offense specified therein.' "
House v. State, 380 So.2d 940, 943 (Ala. 1979).
 V.
The appellant, in a pro se brief, raises two additional issues on appeal.
First, the appellant claims that he was entitled to an evidentiary hearing on his motion for new trial. On July 29, 1991, the appellant filed a timely motion for new *Page 1319 
trial consisting of 270 handwritten pages. One of the issues raised in that motion is the ineffective assistance of trial counsel. That motion was denied by the trial court without comment on August 5, 1991. Thus, the issue of whether counsel was ineffective under Strickland v. Washington, 466 U.S. 668,687, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984), has been preserved for appellate review. See Ex parte Jackson,598 So.2d 895 (Ala. 1992).
Despite the numerous allegations of counsel's ineffectiveness, the appellant has failed to convince this Court that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.
 "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.
". . . .
 ". . . The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."
Strickland v. Washington, 466 U.S. at 687, 694,104 S.Ct. at 2064, 2068.
Most of the appellant's allegations of counsel's ineffectiveness involve the issue of the pretrial identification procedures. This Court entertains no doubt that had all pretrial identifications been suppressed, the appellant would still have been convicted. Here, as in United States v.Gregory, 891 F.2d 732, 734 (9th Cir. 1989), "[e]ven assuming that the photospread lineup was impermissibly suggestive, the in-court identifications of [the appellant] appear to be reliable in light of the analysis set forth in Neil v. Biggers,409 U.S. 188, 199-200, 93 S.Ct. 375, 382-383, 34 L.Ed.2d 401
(1972)." As the appellant stated to the trial court: "Judge, I don't have any defense against that's-the-man identification." R. 119.
Second, the appellant argues "the absence of a substantial portion of the record." Appellant's pro se supplemental brief filed December 9, 1992, at 32. This argument relates to the appellant's pro se "motion to correct the reporter's transcript record on appeal" and, like that motion, appears to cover far more than merely supplementing or correcting the record on appeal as permitted by Rule 10(f), A.R.App.P. In his argument and motion, it appears that the appellant is seeking to introduce new or additional evidence in support of his claims rather than merely seeking to make the record reflect what actually occurred at trial. "Rule 10(f), Alabama Rules of Appellate Procedure, does allow the record on appeal to be supplemented, but only to include matters which were in evidence at the trial level and inadvertently omitted from the record on appeal. This rule was never intended to allow matter to be included in the record on appeal which was not before the trial court." Richburg v. Cromwell, 428 So.2d 621, 622
(Ala. 1983). "The purpose of Rule 10(f) is to supply materials omitted from the record so that the record on appeal will accurately reflect what occurred in the trial court. Rule 10(f) neither contemplates nor authorizes the introduction of documents, exhibits, evidence, or other matters which could or should have been, but were not, introduced at the original trial or hearing." Thomas v. State, 550 So.2d 1057, 1062
(Ala.Cr.App.), affirmed, 550 So.2d 1067 (Ala. 1989).
The appellant argues that he was denied the assistance of counsel in connection *Page 1320 
with his motion for new trial.[1] Appellant's supplemental brief of December 9, 1992, pp. 26-31. That argument is not supported by the record.
In connection with this issue, the following are the significant events:
 July 8, 1991 — Trial counsel filed a motion for new trial. R. 505, 511, 918-20.
 July 23, 1991 — That motion was denied. R. 505, 511, 921.
 July 29, 1991 — The appellant filed a pro se motion for new trial in which he alleged the ineffective assistance of trial counsel. R. 625-795. That motion was verified by the appellant on June 25, 1991. R. 795
 July 31, 1991 — The appellant filed a motion to dismiss trial counsel alleging the ineffectiveness of trial counsel and asserting a potential conflict of interests. R. 505, 511, 922-24. In that motion, the appellant requested the appointment of "adversarial trial counsel who will guarantee Holland's 6th amendment right to a fair trial on pending cases; and first appeal." R. 923.
 August 1, 1991 — The trial court grants trial counsel's motion to withdraw. Supp.R. 331.
 August 5, 1991 — Appellant's pro se motion for new trial is denied by the trial court. R. 505, 511, 934.
 February 20, 1992 — The appellant filed a pro se request for notice of appointment of counsel. Supp.R. 6, 12.
 February 24, 1992 — Rob Turner is appointed as appellate counsel. Supp.R. 12.
Throughout the trial and appellate proceedings,[2] the appellant has attempted to represent himself along with, and sometimes in opposition to, the representation provided by his appointed counsel. "While a defendant has a Sixth Amendment right to be represented by counsel or to represent himself, . . . he does not have the right, under either the federal or state constitutions, to hybrid representation." Christianson v.State, 601 So.2d 512, 519 (Ala.Cr.App. 1992).
The judgment of the circuit court is affirmed.
AFFIRMED.
TAYLOR, PATTERSON and McMILLAN, JJ., concur.
MONTIEL, J., recuses himself.
[1] In King v. State, 613 So.2d 888 (Ala.Cr.App. 1993), released this date, this Court held that a motion for new trial is a critical stage of the prosecution at which an indigent defendant is entitled to the assistance of counsel, absent a knowing, intelligent, and voluntary waiver of that right.
[2] This Court notes that the appellant was extremely disruptive throughout the course of his trial. R. 93, 100, 114, 117, 119, 121, 316.