[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 791 
This appeal is from the second conviction and sentence of the appellant, James David Beard, whose original conviction was reversed and case remanded by this court. Beard v. State,612 So.2d 1335 (Ala.Crim.App. 1992). Following his second trial, the appellant was convicted of the capital offense of murder during a burglary in the first degree; § 13A-5-40(a)(4), Code of Alabama 1975. At the penalty phase of the second trial, the state, at the request of the victim's family, agreed not to pursue the death penalty. The trial judge sentenced the appellant to life imprisonment without the possibility of parole.
The facts of this case are well documented in the originalBeard opinion. 612 So.2d at 1337-39. A synopsis of these facts follows. The victim, Jesse H. Pitts, was found on February 26, 1990, in his residence, dead as a result of three gunshot wounds. The evidence gathered from the scene included, among other things, .38 caliber bullets found in the walls of the house, a towel containing semen stains and two pubic hairs, and a written description and serial number of a .38 caliber pistol owned by the victim and missing from the scene of the crime. This description was "Charter Arms .38 Special, Serial number 666482."
Approximately one and one-half weeks after the body was found, the appellant was arrested on a probation violation while driving a rented truck on Interstate 59 in Etowah County. The police took the truck to the Etowah County Sheriff's Department and conducted an inventory search. During this search, the investigators found a guitar case containing a guitar and the .38 caliber pistol missing from the victim's residence.
The evidence at trial showed that the bullets recovered from the victim's residence and from his skull were similar to test bullets fired from the gun found in the appellant's guitar case. The pubic hairs found on the towel in the victim's residence were consistent with pubic hairs taken from the appellant's codefendant, Tammy Blackburn. Undigested food from the victim's stomach indicated the time of death as late on the night of February 24, 1990.
Terri Cranford, a friend of Tammy Blackburn, testified that she saw the appellant in possession of a gun similar to that belonging to the victim a few days after the murder and *Page 792 
that the appellant obtained a file with the intention of filing off the pistol's serial number. Jason Childers, who was in the truck when the appellant was arrested, testified that on the night of the murder the appellant and Blackburn had left Terri Cranford's house, where they were all staying at the time, and had returned at approximately 11:00 P.M. with a roll of money. Childers also testified that a few days later, the appellant and Blackburn redeemed a guitar and a case from a local pawn shop and the appellant showed him the gun. Childers remembered the serial number because of the significance of the number 666 and because 482 was the prefix to his grandmother's telephone number. Later, the appellant told Childers that he had killed Jesse Pitts and described how the shooting occurred.
In this trial, the appellant had alibi witnesses testify that he was with them at the time of the shooting. The appellant then testified that he was somewhere else at the time of the murder. Through his testimony, he attempted to implicate Jason Childers as the person who shot Pitts.
 I.
The appellant claims that the trial court erred in denying his motion for a change of venue. During a pretrial hearing on this motion, the appellant introduced 32 articles about his case that appeared in the local paper, The Sand MountainReporter, between February 27, 1990, and December 22, 1992. Additional articles had also appeared in the Huntsville and Gadsden newspapers, and there had been television news reports as well.
 "The determination of whether or not to grant a motion for change of venue is generally left to the sound discretion of the trial judge because he has the best opportunity to assess any prejudicial publicity against the defendant and any prejudicial feeling against the defendant in the community which would make it difficult for the defendant to receive a fair and impartial trial.
 "Nelson v. State, 440 So.2d 1130, 1132 (Ala.Cr.App. 1983). See also Trahan v. State, 450 So.2d 1102
(Ala.Crim.App. 1984). An appellant must prove a 'gross abuse of discretion' before the trial court's ruling on a motion for change of venue will be reversed on appeal. Anderson v. State, 443 So.2d 1364 (Ala.Cr.App. 1983)."
Hunt v. State, 642 So.2d 999, 1042 (Ala.Crim.App. 1993), aff'd 642 So.2d 1060 (Ala. 1994).
The appellant, in his brief on appeal, argues that the news media coverage of the original trial and the subsequent reversal of his conviction was so prejudicial and so saturated the community that no impartial jury could be found. This is the presumed prejudice standard. Hunt v. State, 642 So.2d at 1042-43.
 " 'At the outset, we emphasize the fact that the presumptive prejudice standard recognized in Rideau [v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963)] is only "rarely" applicable. Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 554, 96 S.Ct. 2791, 2800, 49 L.Ed.2d 683 (1986), and is reserved for an "extreme situation." Mayola v. State of Alabama, 623 F.2d 992 (5th Cir. 1980). In short, the burden placed upon the petitioner to show that pretrial publicity deprived him of the right to a fair trial before an impartial jury is an extremely heavy one.' "
 "Coleman v. Kemp, 778 F.2d 1487, 1537 (11th Cir. 1985)."
Slagle v. State, 606 So.2d 193, 195 (Ala.Crim.App. 1992).
The appellant has not produced any evidence to show that coverage was so prejudicial and so saturated the community that jury prejudice should be presumed. The only newspaper stories in the record are from The Huntsville Times. (C. 443-58.) These stories are about the trial of the appellant's codefendant and mention the appellant only peripherally. Additionally, these stories are factual in nature and are not inflammatory or prejudicial in tone. We are unable to review the stories fromThe Sand Mountain Reporter because they were not included in the record. It is the appellant's duty to check the record to assure that it is complete before submitting the appeal; we will not assume error from a silent record. Allison *Page 793 v. State, 645 So.2d 358, 361 (Ala.Crim.App. 1994).
 "Newspaper articles or widespread publicity, without more, are insufficient to grant a motion for change of venue. Anderson v. State, 362 So.2d 1296, 1298 (Ala.Crim.App. 1978). As the Supreme Court explained in Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642-43, 6 L.Ed.2d 751 (1961):
 " 'To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. . . .'
 " 'The standard of fairness does not require jurors to be totally ignorant of the facts and issues involved. Murphy v. Florida, 421 U.S. 794, 799-800, 95 S.Ct. 2031, 2035-36, 44 L.Ed.2d 589
(1975). Thus, "[t]he proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination." Anderson v. State, 362 So.2d 1296, 1299 (Ala.Crim.App. 1978).' "
"Ex parte Grayson, 479 So.2d 76, 80 (Ala. 1985)."
Slagle v. State, 606 So.2d 193, 194-95 (Ala.Crim.App. 1992).
In this case, the jury voir dire covered approximately 735 pages of the trial transcript and was very thorough. The appellant offers no evidence that any of the jurors indicated an inability to render a fair and impartial verdict based on the evidence adduced at trial. We find no error in the trial court's denial of the appellant's motion for a change of venue.
 II.
The appellant contends that his arrest in Etowah County on a Marshall County probation violation arrest authorization was a violation of § 15-10-10, Code of Alabama 1975. The appellant does not contest the validity of the arrest authorization. The foundation of this issue is that an arrest warrant and a probation officer's authorization for arrest are equivalents; therefore, the arrest authorization must be endorsed by a judge or magistrate in Etowah County pursuant to § 15-10-10. However, the process for arresting probation violators is set out in §15-22-54, and this Code section has no endorsement requirement.
Assuming, arguendo, that an arrest warrant and a probation officer's written arrest authorization are equivalents, the appellant's argument still fails. An arrest warrant "may be executed by any law enforcement officer within the State of Alabama." Rule 3.3(a), Ala.R.Crim.P.; Taylor v. State, [Ms. CR-92-1313, July 8, 1994] ___ So.2d ___, ___ (Ala.Crim.App. 1994). The appellant's arrest was valid.
 III
The appellant argues that the trial court erred in denying his motion to suppress evidence seized as a result of an illegal search of the truck in which the appellant was arrested. Specifically, the appellant contends that the Etowah County Sheriff's Department did not have an established inventory search policy and that the arrest for a probation violation was a mere pretext for a search of the vehicle under the guise of an inventory search. The appellant raised this same issue in his appeal of his original conviction. In that case, we found that the appellant had no reasonable expectation of privacy in the rented truck and, therefore, lacked standing to challenge the search and seizure. Beard v. State, 612 So.2d at 1340.
The evidence revealed that the appellant was driving the truck, which his codefendant had rented, when he was arrested. The codefendant was not present at the time of the arrest and the subsequent impoundment and search of the truck. We again find that the appellant lacked standing to challenge the search of the truck and seizure of evidence found therein. SeeUnited States v. Obregon, 748 F.2d 1371 (10th Cir. 1984) (defendant in possession of vehicle that was rented by a third party and as to which the defendant could not show that any arrangement authorizing him to drive the vehicle did *Page 794 
not have standing to challenge search of rented vehicle).
 IV.
The appellant asserts that the trial court erred in failing to grant his motion to prohibit the imposition of the death penalty. The appellant claims that sentencing him to death was discriminatory because he is male and his female codefendant, also convicted of capital murder, was sentenced to life imprisonment without parole. This issue is moot because the appellant was sentenced to life without parole, in accordance with the request of the victim's family.
 V.
The appellant claims that the trial court erred in denying his motion challenging the composition of the jury venire because of the alleged systematic underrepresentation of "blacks, women, and other cognizable groups." (Appellant's brief at 29.)
 "In order to establish a prima facie violation of the fair cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which the juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process. Duren v. Missouri, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979)."
Madden v. State, 624 So.2d 1082, 1083-84 (Ala.Crim.App. 1993). The appellant failed to prove that blacks or women had been systematically excluded from the jury selection process in Marshall County. Thus, the appellant failed to establish a prima facie violation of the fair cross-section requirement and the appellant's motion was properly denied.
 VI.
The appellant claims that the trial court erred in reinstating seven jurors after the appellant's challenges for cause of these jurors had been granted.
At the end of the challenge for cause process, 36 prospective jurors remained on the venire, the minimum from which to strike a jury in a capital case. Rule 18.4(f)(1)(i), Ala.R.Crim.P. The appellant then challenged another juror and the trial court granted that challenge but reinstated seven other jurors whose challenges by the appellant had earlier been granted. These challenges were granted as an accommodation to the appellant, and the trial court stated at the time it granted challenges that the grounds were not sufficient to keep these prospective jurors off the jury and that its ruling in this matter was not final until the challenged jurors were excused.
We first note that a trial judge has broad discretion in granting or denying challenges for cause. Smith v. State,646 So.2d 704, 715 (Ala.Crim.App. 1994). "Furthermore, state trial judges have the authority to change rulings, or to change their minds about rulings." Demos v. Johnson, 835 F.2d 840, 843
(11th Cir. 1988), cert. denied, 486 U.S. 1023, 108 S.Ct. 1998,100 L.Ed.2d 229 (1988). See also Holland v. State,615 So.2d 1313, 1318 (Ala.Crim.App. 1993). We find no error in the trial court's action.
Even if the judge's action was error, however, it was harmless error. After informing the appellant of its intent, the State used its first seven peremptory challenges to remove the seven reinstated jurors. The challenged jurors were ultimately removed and, at the same time, the appellant retained all of his peremptory challenges while the State, in effect, reduced its number of peremptory challenges. InAverhart v. State, 488 So.2d 514 (Ala.Crim.App. 1986), the trial judge denied a defense challenge for cause and the defendant then intended to use a peremptory strike to remove the challenged juror, but mistakenly struck another juror. When informed of this by the defense, the trial judge removed the originally challenged juror and added the struck juror as an alternate. The defendant, on appeal, claimed error because the judge denied his original challenge for cause. This court deemed that the error, if any, was harmless under Rule 45, Ala.R.App.P., because the challenged juror was, in fact, removed from the jury. *Page 795 Averhart v. State, 488 So.2d at 516. We see no injury to the appellant in the reinstatement of these seven prospective jurors.
 VII.
The appellant argues that, because this was a capital murder case, the trial court erred, under § 12-16-100, Code of Alabama 1975, in calling in additional prospective jurors before voir dire began and that Rule 18.4(h), Ala.R.Crim.P., is unconstitutional as it applies to capital defendants.
The trial judge wanted at least 65 prospective jurors available before challenges for cause were made to assure that at least 36 prospective jurors would be available from which to strike. After excusing a number from the venire, the judge was left with approximately 57 prospective jurors. The judge ordered approximately 16 additional prospective jurors summoned by telephone, in accordance with Rule 18.4(h)(1), Ala.R.Crim.P.:
 "(1) In empaneling juries. Whenever there are not enough qualified jurors in attendance to form the juries required, the judge presiding shall draw from the trial court jury box or from a list compiled pursuant to the provisions of Ala. Code 1975, §§ 12-16-145 and 12-16-146, the names of as many prospective jurors as he may deem necessary to complete the empaneling of all juries then required. The court shall cause to be summoned forthwith all prospective jurors thus selected, to attend court when required, and they may be summoned by personal service or by telephone. The court shall then proceed to empanel or complete the empaneling of the juries.
The Committee Comments to Rule 18.4 state that this rule supersedes § 12-16-100, Code of Alabama 1975. As the trial court made clear, these additional jurors would also be used in other trials during that week. Calling these additional jurors was in compliance with the provisions of the rule.
The appellant claims that Rule 18.4, Ala.R.Crim.P., is unconstitutional under the Fifth and Fourteenth Amendments to the United States Constitution because, he says, it may subject a capital defendant to trial before a "special venire" as stated in § 12-16-100(a), Code of Alabama 1975. However, the appellant fails to argue how this rule is unconstitutional.
In any event, we do not see these supplemental jurors as a "special venire." The supplemental jurors were added to the venire assigned to the appellant's case. However, any jurors challenged for cause would remain in the jury pool for service in other trials. Jurors who may serve on other trials during a week of service are deemed part of a regular venire, as opposed to jurors who are summoned to serve for a specific trial.Forehand v. State, 624 So.2d 688, 690 (Ala.Crim.App. 1993);Alabama Great Southern R.R. v. Bolton, 242 Ala. 562,7 So.2d 296, 298 (1942). The supplementing of the jury panel to ensure that the statutory minimum from which to strike is available does not constitute a "special venire."
 VIII.
The appellant contends that the trial court erred in denying his motion to bar jury sentencing in this retrial, on the ground of double jeopardy, because the jury in the original trial recommended a sentence of life imprisonment without parole. This issue is moot because the State, at the request of the victim's family, recommended a sentence of life imprisonment without parole for the appellant. The jury was not involved in any sentence recommendation and the appellant did not receive the death penalty.
 IX.
The appellant argues that the trial court erred in denying his motion for a mistrial based on certain aspects of the jury selection process, specifically, the lack of a fair cross section of the community in the pool of prospective jurors and the reinstatement of the seven challenged jurors. These issues were previously addressed in Parts V and VI of this opinion, respectively.
 X.
The appellant contends that the trial judge erred in denying the appellant's motion *Page 796 
that he recuse himself from this trial because he had presided at the appellant's original trial and at the codefendant's trial. The appellant's contention is based on the judge's knowledge of the facts of the case and the fact that the trial judge sentenced the appellant to death in the original trial after the jury recommended life imprisonment without parole.
 " 'Ordinarily, a judge's rulings in the same or a related case may not serve as a basis for a recusal motion. Jaffe v. Grant, 793 F.2d 1182, 1189 (11th Cir. 1986), cert. denied, 480 U.S. 931, 107 S.Ct. 1566, 94 L.Ed.2d 759 (1987). The judge's bias must be personal and extra-judicial; it must derive from something other than that which the judge learned by participating in the case. Id. at 1188-1189. An exception to this general rule occurs when the movant demonstrates 'pervasive bias and prejudice.' Id. at 1189. (quoting United States v. Phillips, 664 F.2d 971, 1002-03 (5th Cir., Unit B 1981), cert. denied, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354
(1982).'
 "McWhorter v. City of Birmingham, 906 F.2d 674, 678 (11th Cir. 1990), quoted in Parker v. State, 587 So.2d 1072, 1097 (Ala.Cr.App. 1991), affirmed, 610 So.2d 1181 (Ala. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 3053, 125 L.Ed.2d 737 (1993)."
M.M. v. State, 649 So.2d 1345, 1346 (Ala.Crim.App. 1994). In this case, the appellant presented no evidence of pervasive bias or prejudice and this issue is without merit.
 XI.
The appellant asserts that the trial court erred in denying his motion for a new trial. This motion stated:
 "COMES NOW, the Defendant, JAMES DAVID BEARD, by counsel who moves this Honorable Court for a new trial and in support hereof says as follows:
 "1. That summoning a special jury is in violation of state statute.
 "2. That death qualifying the jury indicates Defendant's guilt and is discriminatory.
 "3. That the Court granted challenges for cause based upon numbers.
 "4. That the Court reversed challenges already granted.
 "5. That the Court allowed bias [sic] jurors back on the panel.
 "6. That the Court denied the Defendant due process by forcing trial when there was not thirty-six (36) available jurors.
 "7. That the Court erred by allowing evidence without a suppression hearing.
 "8. That the Court erred by admitting fruits of a poison search.
 "9. That the Court erred by allowing Dr. Embry to testify to previous trials unsolicited in violation of the order of limine.
 "10. That the Court erred by not allowing the Defendant an opportunity to fully explore the inventory search policy of the Etowah County Sheriff's Department; that said inventory was a ruse to conduct search.
 "11. That the Court erred by permitting evidence from an illegal search.
 "12. That the Defendant is entitled to and moves for a mistrial as several jurors consumed alcoholic beverages during their sequestration."
(C. 607-08.)
Following a hearing on this motion, the trial court denied the motion on each and every ground.
 " 'The granting or denying of a motion for new trial rests largely within the discretion of the trial court, and the exercise of that discretion carries with it a presumption of correctness that will not be disturbed on appeal unless some legal right was abused and the record plainly and palpably shows that the trial court was in error.' "
 "Gold Kist, Inc. v. Tedder, 580 So.2d 1321, 1322
(Ala. 1991)."
State v. Blue, 617 So.2d 700, 701 (Ala.Crim.App. 1993).
The appellant raised grounds 1 through 8, 10, and 11 in his brief on appeal and we found no error in the trial court's ruling on those grounds and no evidence was offered in the motion or at the hearing to support these *Page 797 
grounds. Likewise, grounds 9 and 12 were argued with no evidence to support them.
 " 'Assertions of counsel in an unverified motion for new trial are bare allegations and cannot be considered as evidence or proof of the facts alleged.' Daniels v. State, 416 So.2d 760, 762
(Ala.Cr.App. 1982). See also Donahoo v. State, 505 So.2d 1067, 1075 (Ala.Cr.App. 1986)."
Daniels v. State, 650 So.2d 544, 553 (Ala.Crim.App. 1994). The trial court did not err in denying the appellant's motion for a new trial.
The judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur.